KENEIPP et al. v. UNITED STATES.

No. 10395.

United States Court of Appeals District of Columbia Circuit.

Argued May 31, 1950.

Decided July 24, 1950.

Mr. Hugh Keneipp, Washington, D. C., for appellants.

Mr. Edward J. P. Zimmerman, Special Assistant to the Attorney General, for appellee. Messrs. Ellis N. Slack and Loring W. Post, Special Assistants to the Attorney General, Mr. George Morris Fay, United States Attorney, and Mr. Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief for appellee.

Before EDGERTON, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action to recover federal income taxes paid by individuals for the calendar year 1941.

Appellants owned three tracts of land, one containing 20.34 acres, the second containing 19.07 acres, and the third 8 acres. On the second tract were buildings which constituted the appellants' dwelling. In 1941 the United States instituted condemnation proceedings against the property and deposited in the registry of the court $11,000 against the first tract, $21,000 against the second tract and the buildings, and $3,000 against the third tract, a total deposit of $35,000. A jury returned a verdict in September, 1941, fixing $48,500 as proper compensation. At this point an intervenor filed a claim for damages in the amount of about $2,000. On December 12, 1941, the court ordered the disbursement to appellants of the $35,000 deposited in its registry. On April 11, 1942, the court heard the intervening petition and on August 1, 1942, entered an order of distribution, directing its clerk to pay the intervenor about $1,800 and to pay to the appellants the remaining balance of the $48,500 fixed by the verdict, which balance was $12,644.98.

Appellants filed their 1941 income tax return on March 12, 1942, and computed a gain of $14,848.98 upon the disposition of the property, which they treated as a long-term gain. The Collector of Internal Revenue revised the computation, holding that one of the buildings had been occupied by tenants who paid rent and that therefore the gain on that portion of the property must be treated as ordinary income. He allocated to the rented portion $5,263.07, against which he charged depreciation and computed a gain. He assessed a deficiency tax of $857.96, which appellants paid with interest.

On March 27, 1944, appellants filed a claim for refund. This was on the proper form provided by the Bureau of Internal Revenue and was properly executed. On the face of the form appellants stated the amount of the claim as $937.29 and stated the reason for the claim in the following language:

"The deficiency is based on theory and assumptions entirely unwarranted by the facts, and inconsistent with the reasonable presumptions that the proceedings of the court and the findings of the jury were compatible with the law which governs the taking of property for public purposes."

On the face of the form appellants also referred to an attached statement, which statement was two and a half single-spaced,

typewritten pages long and contained many details concerning the condemnation of the property.

Thereafter, on February 19, 1945, the Internal Revenue Agent in Charge advised appellants that they had overpaid their 1941 tax in the sum of $583.64 and explained that this result was caused by adjustments in the computations of the profit resulting from the condemnation of the property. Appellants requested a conference, and this was arranged for December 5, 1945, before the Technical Staff of the Bureau of Internal Revenue. Thereafter, on May 10, 1946, the Acting Head of the New York Division of the Technical Staff wrote appellants, "Reference is made to your claim for refund in the amount of $937.29 of income tax paid for the taxable year 1941, which was made the subject of a hearing before this Division on December 5, 1945", and advised them that the claim would be disallowed. Thereafter the Deputy Commissioner wrote appellants, heading his letter "In re: Claim for refund of $937.29 For the year 1941" and formally advising them of the disallowance in full of the claim. Thereupon appellants twice requested from the Internal Revenue Agent in Charge a copy of his report to the Technical Staff as of the time the claim was referred to that Staff in November, 1945. On December 24, 1946, the Internal Revenue Agent in Charge acknowledged appellants' second request, "in which you request a copy of the report to the Technical Staff relative to your claim for the year 1941", and advised them that "There are enclosed revised schedules prepared as a result of the conference in this office, wherein an overassessment of $857.96 is recommended." The "enclosed revised schedules" showed in detail a recomputation of appellants' income taxes for 1941 and stated, "Gain from condemnation award is eliminated from income of 1941." These schedules showed an overpayment of income tax in the amount of $2,611.31 but limited the allowable overassessment to $857.96, as a limitation under Section 322(b) (2) (D) of the Internal Revenue Code, 26 U.S.C.A. § 322(b) (2) (D).

From the foregoing events it is clear beyond dispute that as of November, 1945, the officials of the Bureau of Internal Revenue thoroughly understood that the appellants' claim, then on file, for the year 1941 involved the entire treatment of the condemnation of this property. According to the official statement of the Internal Revenue Agent in Charge, purporting to inform the appellants of the report which he made to the Technical Staff, he at that time treated the claim as justifying the elimination from income for 1941 of the gain from the condemnation award. Upon this record of events the United States cannot now be heard to say that the authorized officials of the Bureau of Internal Revenue were not aware that the claim which was on file in November, 1945, involved the elimination from income for 1941 of the gain from the condemnation.

In the meantime, on December 10, 1945, immediately after the conference before the Technical Staff on December 5, 1945, appellants filed another claim for refund, this time specifically alleging that the long-term gain from the condemnation award was erroneously included in their return for 1941. This claim, appellants stated, was the result of the hearing before the Technical Staff on December 5, 1945.

The case as it comes before us is in two parts, one procedural and the other substantive.

The United States contends that the complaint necessarily rests upon the second claim for refund, that that claim was a new and separate claim from the first, and that this second claim was not filed within the time permitted by the statute. The first claim, the Government admits, was filed in proper form and time. The complaint on its face alleges that it is based on that claim. If the first claim encompassed the grounds upon which the complaint was premised, that claim itself is a sufficient basis for the complaint. Moreover, if the second claim did not rest upon a new and separate ground but was amendatory of the first claim, the complaint has a proper basis in the second claim. We think it is clear beyond dispute that the first claim was sufficiently broad

and sufficiently definite to raise the question as to the entire treatment of the condemnation award, and that the second claim was merely a specification of the first; that the complaint would have been proper if the second claim had never been filed.

■ The principles which determine the sufficiency of claims for refund have been stated and restated.[1] The rule is that the claim must be sufficient to advise the Commissioner of Internal Revenue as to the items as to which the taxpayer claims error and the grounds upon which the taxpayer makes his claim. If the Commissioner understands the grounds and deals with the claim on the basis of his understanding, the claim is sufficient. A basic public policy is involved in this broad doctrine. Insistence upon nice technicalities of expression on the part of taxpayers in dealings with the Government concerning taxes must certainly compel taxpayers to deal with the Government through technicians. The Bureau of Internal Revenue has long sought to encourage a direct, informal and non-technical presentation.

■ The substantive point in the case at bar is whether the gain upon the condemnation award was, under the circumstances we have related, returnable in 1941. The Internal Revenue Agent in Charge, in his report to the Technical Staff, recommended the elimination of the entire gain on the condemnation award. These taxpayers were on a cash basis.[2] The treatment of judgments recovered by taxpayers on a cash basis has been established without deviation for many years. A judgment is treated as income to a taxpayer on a cash basis at the time when the money or property is recovered. The rule is recited in the Regulations as follows: "If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received." [3]

A part of the judgment in the case at bar was recovered by the taxpayers in 1941, but as of the end of that year the balance of the verdict was not available to them, no court order of distribution having been entered, and, moreover, appellants did not even know whether they would actually recover the entire amount. It has been the undeviating rule for many years that upon a sale of real estate by a taxpayer on a cash basis no gain is realized until the cost, or other adjusted basis, has been recovered.[4] Condemnation judgments are treated as sales.

The United States refers us to a regulation concerning the taxation of negotiable notes given as compensation for personal services.[5] That regulation has no connection with the problem at hand.

■ This taxpayer received in 1941 $35,000 cash from his condemnation award. If that amount exceeded his adjusted basis for the property, he had at that time a taxable gain in the amount of such excess. The adjusted basis consisted of cost (both original and additional capital costs by way of improvements) less depreciation accrued or accruable.[6] Depreciation was accruable in respect to property used in a trade or business and in respect to property held for

1. Bemis Bro. Bag Co. v. United States, 1933, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Factors & Finance Co., 1933, 288 U.S. 89, 53 S. Ct. 287, 77 L.Ed. 633; United States v. Andrews, 1938, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398.

2. Appellants' attempt to place this one item on an accrual basis was not permissible under Treasury regulations. Regs. 103, § 19.41–2.

3. Regs. 103, § 19.42–1. See the extensive discussion in H. Liebes & Co. v. Commissioner of Internal Revenue, 9 Cir., 1937, 90 F.2d 932, and the many cases there cited; also Helvering v. Nibley-Mimnaugh Lumber Co., 1934, 63 App. D.C. 181, 70 F.2d 843.

4. See P-H Tax Serv. §§ 6253, 6254 (1950).

5. Regs. 103, § 19.22(a)-4, entitled "Compensation paid in notes."

6. Int. Rev. Code § 113(b)(1) (B), 26 U.S. C.A. § 113(b)(1) (B).

the production of income.[7] The trial court found that appellants "used parts of the property to produce income". When the adjusted basis has been properly computed it should be compared with the cash received in 1941, in order to determine whether there was a gain taxable in that year. Appellants pleaded costs of $33,651.02 against the $35,000 cash, thus showing a gain of $1,358.98 in 1941.

Whether the gain, if any, taxable in 1941 is a capital gain is a further question. The statute excludes from capital assets property used in trade or business upon which depreciation is accruable. This record is not clear whether the property was "used in trade or business" or was merely "held for the production of income". The trial court used the two terms apparently interchangeably. They are, however, vitally different in the statutory definition of capital assets. As the regulations of the Treasury make clear,[8] depreciable property used in a trade or business is excluded from capital assets, but property merely held for the production of income is not. The Government says in its brief that the trial court found as a fact that the property was used in a trade or business. As we have pointed out, by quoting, the finding was to the opposite effect, being merely that the property was held for the production of income. In its statement of the case, in its brief, the Government says: "Taxpayers from time to time rented and otherwise used parts of the property to produce income * * *." That conclusion may be correct, and, if so, the property was a capital asset. A definite finding should be made as to which of the two phrases properly characterized this property.

We perceive no basis upon which the allocation made by the Commissioner of the condemnation award among the several pieces of property can be sustained. The total award was $48,500. The Commissioner allocated to the tract with the buildings $37,000, which left $11,500 allocable to the two other tracts. But the Government paid into the registry of the court $14,000 for those two tracts, and the court's order of distribution directed the payment of the $14,000 for those two tracts. The Government's allocation is thus completely erroneous on its face. The District Court held that since there was a lump-sum award the Commissioner of Internal Revenue had power to make whatever allocation he pleased. The Commissioner has no such arbitrary power. He has wide latitude in the ascertainment of the fact as to what were the amounts awarded on account of the several tracts and several pieces of property. But his ascertainment must be within the realm of the ascertainment of a fact. He has no unilateral power to allocate as he pleases, and thus to create income as he pleases, where no income, or a different amount of income, exists. His own published rule is that such an apportionment must be upon the comparative values as of the date of the sale.[9]

It follows from all the foregoing that the case must be remanded for further proceedings in accord with this opinion. We think that such proceedings need not be elaborate or extensive. The Bureau of Internal Revenue has many auditors who can quickly compute the gain properly taxable to these appellants upon the facts of this case and the principles we have referred to.

Reversed and remanded.

7. Int. Rev. Code § 23 (*l*), 26 U.S.C.A. § 23(*l*).

8. Regs. 103, § 19.117-1; Regs. 111, § 29.-117-1.

9. I. T. 3246, 1939-1 Cum.Bull. 137.