Whitaker, Judge,
delivered the opinion of the court:
This is an action to recover income and excess profits taxes paid for the fiscal year ending July 31, 1945.
In the fiscal year ending in 1946 the taxpayer sustained a net operating loss. Under the statute, it is permitted to carry back this net operating loss to reduce the income, first, of the second preceding taxable year, and, second, to the immediately preceding taxable year, etc. After the net operating loss has been applied against the income for the second preceding taxable year, the excess is then applied to the immediately preceding taxable year. Hence, in order to determine the amount the taxpayer is entitled to deduct from its income for the fiscal year ending in 1945, it is neces *206 sary to determine the amount by which the net loss carry-back exceeds the net income for 1944,[1] if any.
1. In 1944 plaintiff had income derived in part from Government contracts. These contracts were renegotiated, and the amount of the excessive profits realized therefrom was settled in the year 1945. Plaintiff, however, deducted the amount of the excessive profits from its income for 1944, pursuant to a ruling of the Internal Revenue Bureau. (I. T. 3611; 1943 Cum. Bull. 978.) The propriety of the deduction of them in 1944 is the first question presented.
On October 21, 1942 Congress amended the 1939 Internal Revenue Code by adding section 3806, which in subsection (a) (1) provided that the contract price on Government contracts received or accrued in a taxable year should be reduced by the amount of excessive profits determined on renegotiation, whether the determination was made in the taxable year or not. In subsection (a) (3) it was provided that the amount of excessive profits repaid should not constitute a deduction in the year in which repaid or incurred.
Following the enactment of this section, the Bureau of Internal Revenue received an inquiry about the proper application of it in the computation of taxes for the year in which the contract price had accrued and for the year in which the excessive profits were repaid. In reply the Bureau issued I. T. 3611, supra. It permits a taxpayer on his return to report the amount of his income accrued on Government contracts within the year, reduced by the amount of excessive profits thereon, although determined in a later year, provided the taxpayer had not already filed his return and paid the taxes shown to be due thereon. This taxpayer had not filed its return, due to an extension of time for its filing, and, hence, it reported in 1944 the amount accrued under the Government contracts in that year, less the amount of excessive profits determined in the following year.
The statute (section 3806) did not give a taxpayer permission to file his return on this basis. In the preparation of his return a taxpayer was required to report the full amount accrued under his Government contracts within the *207 taxable year, although negotiations were pending on whether or not these profits had been excessive. This was because of the long standing rule, reaffirmed in United States v. Olympic Radio and Television, Inc., 349 U. S. 232, and Lewyt Corp. v. Commissioner, 349 U. S. 237, that in determining the amount accrued in a taxable year, you do not take into account events happening after the close of the taxable year. The statute only required the Commissioner, in auditing a taxpayer’s returns, to adjust its income in accordance with it. Under it, also, the taxpayer, who had reported on his return the entire income from renegotiated contracts, is permitted to file a claim for refund, based upon the reduction of his income by the excessive profits received by him and repaid.
But, the statute did not mention the presumably rare case where the determination that excessive profits had been received was made before the taxpayer had filed his return. In such case, to save the taxpayer from filing his return and paying the tax and then filing a claim for refund, I. T. 3611 permitted him to return his income from Government contracts within the taxable year, reduced by the amount of the repayment to be made in the subsequent year.
This is the ultimate result which section 3806 required, and I. T. 3611 merely permitted the taxpayer to do in the beginning that which would ultimately be done.
It was a departure from the principle of accruals on an annual basis, but it was a departure dictated by Congress.
At all events, it seems to have been well within the law for the taxpayer to have accrued in 1944 only the amount received on Government contracts, reduced by the amount it had to repay.
As stated, the Lewyt case, supra, reaffirmed the principle of accruals on an annual basis,, without taking into account events subsequently transpiring; but the Court in this case was not concerned with the proper application of section 3806 and I. T. 3611. The statute and the ruling make an exception to the annual accounting principle. Taxpayer’s income for 1944 should be computed accordingly.
2. The next question which the case presents is the proper computation of the excess profits tax for 1944, which section *208 122 (a), (b) and (d) (6) say must be deducted from the income of the second preceding taxable year before application of the net operating loss carry-back.
The Lewyt case says it must be computed on the income accrued within the taxable year. It is not necessarily the amount shown on the return, the court says, for items may not have been properly accrued. But the court said with equal clarity that events transpiring after the close of the taxable year were not to be taken into account. However, we must conclude that this means, “except those required by statute or valid regulation to be taken into account.” I. T. 3611 is a reasonable application of the statute, and we are, therefore, obliged to take it and the statute into account.
We hold, therefore, that in computing the excess-profits tax to be deducted from 1944 income, in order to determine the amount of the net loss for 1946 to be applied against it, we must compute it on its income accrued within the year, as extended by section 3806 and I. T. 3611.
After the deduction of these excess profits taxes, the net operating loss is to be applied against the remainder. If it exceeds the remainder, the excess is to be applied against 1945 net income.
We think this is in accord with the holding of the Olympic Radio and Television, Inc., and Lewyt Oorp., cases, supra.
Plaintiff’s 1945 net income must be computed on this basis.
8. Defendant says that that part of the excess-profits taxes for 1944 which were later refunded should be taxed in the year refunded or refundable, on the theory that the taxpayer received a tax benefit from the deduction of them from its 1944 net income. However, it concedes that this refund is not taxable unless it reduced the net income of the year in which they were deducted, and that section 23 (c) provides that excess profits taxes are not deductible in computing net income. But, the defendant says, plaintiff received a tax benefit for 1945 by the deduction of the 1944 excess profits tax from the income for that year, because, except for this deduction, all of the net loss would have been applied against 1944 income, leaving nothing to be applied against 1945 income.
*209 The difficulty with this is that Congress has directed that, only for the purpose of determining the part of the loss to be deducted from the second preceding taxable year, excess profits taxes for that year must be deducted, and it says nothing about including the amount deducted in the income of a subsequent year.
In a sense, the excess profits tax was deducted from net income for 1944, but its deduction did not reduce plaintiff’s tax liability for that year, and this is necessary to constitute a tax benefit within section 22 (b) (12). It was deducted only for the purpose of determining how much of the net operating loss was to be applied against 1944 income and-how much against 1945 income.
The intention of the Act, allowing a deduction of a net operating loss, was to spread the loss over a period of as much as four years. It had in mind the fluctuations in a taxpayer’s income, and the equity of taking into consideration his income over a five-year period, instead of an annual period. If in four of the five years the taxpayer made money and paid taxes on his profits, and in one year he lost money, provision was made for him to deduct this loss from the income, not of one year only, but of as many as four other years. If in the first year the taxpayer had realized large gains, the entire loss might be absorbed in that year, instead of spreading it over four years of gain. To prevent all of it from being absorbed in the first year in which it was deductible, the statute provided for the deduction from the income for that year of the excess profits tax accrued on it. This was the only purpose of the deduction of excess profits taxes.
So considered, it is evident that the taxpayer has received no tax benefit, not intended by Congress, from reducing its income for 1944 by the amount of the excess profits taxes accrued with respect to it.
In Lewyt Corp. v. United States, at pages 239-240, supra, the Court assumed that under the facts of that case the taxpayer might receive a tax benefit, but it nevertheless said:
The taxpayer, however, contends that the excess profits tax “accrued” in 1944 is the tax shown on its return for that year, vis., $625,561.59. If this larger amount *210 is the correct figure, tben tbe deduction allowed against 1944 income will be so great as to leave a carry-back which can be deducted against 1945 income.
The controversy turns on the meaning of the clause in § 122 (d) (6) which reads, “the amount of tax imposed by Subchapter E of Chapter 2 * * * accrued within the taxable year * * *” The Commissioner contends that the tax “imposed” is the tax ultimately determined to be due. The argument is that the taxpayer having once got back, through credit or refund, the difference between the amount of the tax “accrued” in 1944 and the amount finally determined to be due, no double benefit should be inferred. The double benefit, it is argued, should certainly be denied when the figure upon which it is based has no economic reality.
But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall. See Bullen v. Wisconsin, 240 U. S. 625, 680.
Whether or not plaintiff received a tax benefit, in that a larger part of the net operating loss is to be deducted from 1945 income than would have been deducted had not the excess profits tax for 1944 been deducted from the income of that year, in determining the amount of the net operating loss to be deducted from 1944 income, — whether or not this is so, the refund of excess profits taxes for 1944, or any part thereof, is not to be included in income in the year refunded or refundable.
Plaintiff is entitled to recover. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Eule 38 (c).
It is so ordered.
Laramore, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
*211 FINDINGS OF FACT
The court, having considered the evidence, the stipulation of facts entered into between the parties, and the briefs and argument of counsel, makes the following findings of fact:
1. As set forth in paragraph 19 of the petition, the excess profits tax reported on the return for 1944 was $1,423,265.60. This return also reported an excess profits net income of $1,957,543.74. In a schedule attached to the income and declared value excess profits tax return the item of gross sales in the amount of $12,263,950.63 was reduced by the item of $2,870,670.00 designated as “renegotiation refund,” leaving an item of adjusted gross sales of $9,393,280.63. This method of reporting was in accordance with a ruling of the Internal Revenue Service described as I. T. 3611 and published in 1943 Cum. Bull. 978.
2. The item of $2,870,670.00 referred to above was eliminated from gross income since after the close of plaintiff’s fiscal year 1944, but prior to the filing of its return on December 15, 1944, plaintiff was negotiating with the Navy Price Adjustment Board with respect to excessive profits on its renegotiable business in its fiscal year ended in 1944. It came to an agreement as to the amount of such excessive profits on November 13, 1944. The renegotiation agreement was formally signed January 16, 1945, and under it plaintiff agreed to repay the $2,870,670.00 in two equal installments on February 15, 1945, and June 15, 1945. These payments were made on time. Article 3 of the renegotiation agreement, referring to possible credit under Section 3806 of the Internal Revenue Code of 1939, states as follows:
Tax credit under Section 3806 of the Internal Revenue Code. The amount of profit agreed in Article 1 hereof to be eliminated has not been included in income in the Contractor’s Federal income and excess profits tax returns for said fiscal year and, accordingly, no tax credit under Section 3806 of the Internal Revenue Code is allowed against the amount of such profits to be elimi *212 nated. In the event, however, that Federal income or excess profits taxes shall be assessed upon the amount of profits agreed in Article 1 hereof to be eliminated, or any part thereof, there will be allowed to the contractor the credit, if any, to which the Contractor is entitled under Section 3806 of the Internal Revenue Code with respect to such profits.
3. On September 12, 1946, plaintiff filed on Treasury Department Form 1139 an “Application for Tentative Carry-Back Adjustment” based upon the carry-back of a net operating loss and of an unused excess profits credit from the fiscal year ended in 1946 to the fiscal years ended in 1944 and 1945. As a result of this application plaintiff on or about December 9,1946, received by way of cash or credit a refund of $1,423,265.60 of'the excess profits tax paid by it for the fiscal year ended in 1944. On its income and declared value excess profits tax return for the fiscal year ended in 1946 under Schedule M .entitled “Reconciliation of Net Income and Analysis of Earned Surplus and Undivided Profits” the following-entry appears at line 17 as an adjustment not recorded on books: “Estimated refund of prior years’ State and Federal taxes $1,227,000.00.”
4. In determining the normal tax net income for the fiscal year ended in 1944 the defendant has allowed plaintiff additional amortization of $261,889.49 due to an election filed by plaintiff on or about November 26, 1945, under Section 124 (d) of the Internal Revenue Code of 1939 following the Presidential proclamation dated- September 29, 1945.
5. Certain adjustments were made by the Commissioner of Internal Revenue to plaintiff’s income and excess profits tax liabilities for the fiscal years 1944,1945, and 1946. Protests were made to some adjustments. In 1952 the tax liabilities then determined by the Commissioner were approved by the Joint Committee on Internal Revenue Taxation. On April 18, 1952, plaintiff, as set forth in paragraph 12 of the petition, signed an offer of waiver of restrictions on assessment and collection of the determined deficiencies and overassessments.
*213 The net effect of this conditional settlement is summarized as follows:
NET INCOME 7/31/44 7/31/45 7/31/46
Net income per return (loss) $1,964,775.96 $1,280,177.05 ($1,315,786.89)
Adjustments: Increase in allowable amortization (a) (261, 889. 49)
Net increase— all other adjustments 74, 016. 68 67, 457. 77 9, 696. 28
Adjusted net income before carry-back $1, 776, 903. 15 $1, 347, 634. 82 ($1, 306, 090. 61)
Net operating loss deduction (b) 1, 300, 557. 11
Adjusted net income $476,346.04 $1,347,634.82 ($1,306,090.61)
(a) Amortization claimed on return allowed $446, 747. 57 708, 637. 06
additional allowed per election dated 11/26/45 and claim dated 9/12/46 $261, 889. 49
(b) Net operating loss for year ended July 31, 1946 $1, 306, 090. 61
Less dividends received credit, 1944 5, 533. 50
Net operating loss deduction $1, 300, 557. 11
6. On December 9,1953, plaintiff filed a claim for refund for income taxes for the fiscal year ended in 1945 in the amount of $96,762.03.
7. On December 9, 1953, plaintiff filed a claim for refund of excess profits tax for the fiscal year ended in 1945 in the amount of $19,429.03.
*214 8. Under date of October 27, 1954, plaintiff was sent a copy of a report of a Revenue Agent in which it was advised that its claims would be rejected unless a protest were filed.
9. On November 11,1954, plaintiff addressed a letter to the Director of Internal Revenue at Pittsburgh, Pennsylvania, in which it was stated:
Receipt is acknowledged of your letter of October 27, 1954, in which it is proposed to reject claims for .refund filed for the year ended July 31, 1945, involving income tax of $96,762.03 and excess profits tax of $19,427.03. These claims are based upon the decision of the Court of Claims in the case of Olympic Radio & Television, Inc. v. United States (52-2 USTC ¶9524 and 53-1 ¶ 9232.)
The Supreme Court of the United States has recently granted certiorari in this case, and it. is, therefore, respectfully requested that your office withhold action until the decision of the Supreme Court is announced.
10. In accordance with plaintiff’s request further action on the claim was suspended.. The file of the Internal Revenue Service contains “Information Sheet For Suspense File On Key Cases” dated January 12,1955, in which it is suggested that further action be suspended in the case of National Forge & Ordnance Co. pending the decision by the Supreme Court of the Olympic Radio & Television, Inc. case.
11. On May 23, 1955, the Supreme Court decided the Olympic Radio, Inc., and Lewyt cases. Thereafter, on June 2, 1955, the office of the District Director notified plaintiff that on the basis of the Olympic decision:
* * * it is held that you may not include as a part of the net operating loss for the fiscal year ended July 31, 1946, excess profits tax paid during the 1946 fiscal year, for the fiscal year ending July 31,1945.
It is proposed by this office to consider this case administratively closed, and to proceed with the issuance of registered notice of disallowance of your claims for refund.
If you are not in agreement with proposed action, and desire a further hearing, you are hereby granted a period of ten days from the date of this letter to submit your exceptions to such action.
*215 12. On June 8, 1955, plaintiff requested a hearing in a letter, the pertinent paragraph of which reads as follows:
Under date of November 11, 1954, we requested that action be withheld until the Supreme Court decided the case of Olympic Radio & Television, Inc. v. United States. This case and the case of Lewyt Corporation have now been decided. It would, therefore, seem that our claims should be considered in the light of the decision of the United States Supreme Court in these cases.
13. On June 10, 1955, plaintiff’s representative, E. K. Conaway, wrote to the office of the District Director asking for a conference prior to the proposed formal rejection of the claim.
14. The case was thereupon referred to the Appellate Division of the Chief Counsel’s Office of the Internal Eeve-nue Service for the Philadelphia Eegion.
15. Conferences were thereafter held on July 15, and July 22, 1955. At the conference on July 22, the plaintiff’s representative informed the Technical Advisor representing the Commissioner that the plaintiff was filing revised computations resulting in greater refunds. Accordingly, two documents were filed, each on Form 843, designated as “Amended and Supplemental Claim”, on August 19, 1955, one for excess profits tax for the fiscal year 1945 in the amount of $688,177.76, and one for income tax for the fiscal year 1945 in the amount of $200,756.52. Each of these claims contained an identical computation of income and excess profits tax liability and a computation of excess profits tax accrued. These computations were as follows:

*216

*217

*218

*219

*220

Excess Profits Tax $3, 412, 156. 83
16. On or about October 19, 1955, plaintiff filed a protest with, the District Director of Internal Revenue for the twenty-third district of Pennsylvania in which it contended that it was entitled to refunds of the taxes here involved.
17. On March 14, 1956, plaintiff was advised that the claims for refund would be rejected.
18. Pursuant to the provisions of subsection (a) (4) (D) of the Renegotiation Act (50 U. S. C. A. App. Sec. 1191) plaintiff was advised on July 27, 1954, that it had been allowed a gross renegotiation rebate of $191,284.08, less the Federal tax benefit of $88,634.02, leaving a net renegotiation rebate of $107,650.06. The adjusted normal tax net income *221 for the fiscal year ended in 1944 as set forth in finding 5 above, $476,346.04, should be increased by $191,284.08 representing the gross renegotiation rebate received by plaintiff as a result of the increased amortization allowed (finding 4 above), and the tax payments made by plaintiff for its fiscal year ended in 1944 should be increased by $83,634.02 divided between income and excess profits taxes in the amounts of $71,084.61 and $12,549.41, respectively.
19. The taxes shown to be due on the returns filed by plaintiff for its fiscal year ended in 1944 were paid by dates and in the amounts and by kinds of tax respectively as follows:
Date Income Tax Excess Profits Tax
October 23, 1944 $40,000. 00 $410,000. 00
January 17, 1945 32,064.19 501,632.80
April 27, 1945 36, 032. 09 355,816. 40
July 16, 1945 36, 032. 09 355,816.40
$144,128.37 $1,423,265.60
Plaintiff on December 9,1946, received a refund of all of the excess profits tax paid by it, except the postwar credit of ten percent, in connection with its excess profits tax return for the fiscal year ended in 1944. Of the amount involved $131,520.16 was used to pay a Section 3807 (b) deficiency in income tax and the balance of $1,149,418.88 was paid to plaintiff on December 9,1946.
20. The taxes shown to be due on the returns filed by plaintiff for its fiscal year ended in 1945 were paid by dates and in amounts and by kinds of tax respectively as follows:
Date Income Tax Excess Profits Tax
October 18, 1945 $72,387.39 $227,612.61
January 22, 1946 _ 162, 638. 51
April 22, 1946 36,193. 69 195,125. 57
July 19, 1946 36,193. 69 195,125. 56
$144,774. 77 $780,502.25
Plaintiff on December 9,1946, received a refund of $12,213.18 of the excess profits tax paid by it in connection with its excess profits tax return for the fiscal year ended in 1945. Of the amount involved $5,713.76 was used to pay a Section 3807 (b) deficiency in income tax, and the balance of $6,- *222 499.42 was paid to plaintiff on December 9, 1946. Plaintiff on October 10, 1952, received a further refund of $50,199.48 of the excess profits tax paid by it in connection with its excess profits tax return for the fiscal year ended in 1945. This refund of excess profits tax was applied against an additional assessment of income tax of $50,267.99 for the fiscal year ended in 1945, leaving a balance due of assessed income tax of $68.51. This balance was paid by the application of a credit for overassessment of interest on the excess profits tax for the fiscal year ended in 1944.
21. The income and excess profits taxes which were determined prior to the filing of this suit and which have been paid by plaintiff for its fiscal year ended in 1945 are in the amounts of $200,756.52 and $718,089.59, respectively, and no part of these taxes so determined has been refunded to plaintiff.
22. The capital gain, dividend, and other miscellaneous adjustments of amounts less than $35,000 set forth in the computation in finding 15, above, are not in dispute and may be accepted for the purpose of this proceeding.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Eule 38 (c).

 We shall speak of the fiscal year ending In 1944 as the 1944 taxable year, and, similarly, the fiscal years ending in 1945 and 1946.