John C. **ROBERTSON**, as Executor of the Estate of Thomas H. Robertson, Jr., Deceased, Plaintiff,

v.

**UNITED STATES of America,**
**Defendants.**

**Civ. A. No. 64–515.**

United States District Court
N. D. Alabama, S. D.

Feb. 21, 1968.

Allen D. Rushton and William G. Somerville, Jr., of Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiff.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., and Richard M. Roberts, Acting Asst. Atty. Gen., Stanley F. Krysa and Jan Tyler, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

LYNNE, Chief Judge.

Suing to recover a refund of federal estate taxes paid as the result of a deficiency assessment, plaintiff as executor of the will of his brother, Thomas H. Robertson, Jr., deceased, contends that the Commissioner erred in disallowing the marital deduction claimed under the provisions of 26 U.S.C.A. § 2056.

Thomas H. Robertson, Jr. died in November, 1955, leaving surviving him his widow and a minor son. By his will, duly admitted to probate, he devised and bequeathed to his widow, Evelyn W. Robertson, the homestead and all adjoining lands, the furniture, fixtures and household effects contained therein and his personal bank account. The remainder of his property was to be held in trust, one-half of the income from which was payable to her and one-half to his son. The bequest of the remainder was introduced by the following language:

"My estate, with the exception of my home, personal effects and personal

bank account, consisting principally of real estate and property held and owned jointly by me and my brother, John C. Robertson, share and share alike * * *."

At the time of his death, decedent and his brother were in possession of certificates of corporate stock of a value of $584,148.98, registered in the names of Thomas H. Robertson, Jr. and John C. Robertson, as joint tenants with rights of survivorship. In addition, they held Government bonds of the approximate value of $44,000, registered in the names of (1) "Thomas H. Robertson, Jr., or Mrs. Mary F. England" (sister), (2) "Thomas H. Roberston, Jr., or Mrs. Augusta R. Cotten" (sister), and (3) "Thomas H. Robertson, Jr. or John C. Robertson."

Prior to the filing of the federal estate tax return, two significant events occurred. The widow filed a dissent from the will under the provisions of Code of Alabama, tit. 61, § 18 (1940) (Recomp. 1958) and John C. Robertson claimed only one-half of the securities, disclaiming the remaining one-half.

On the federal estate tax return the executors (co-executor Tom Lindsay died before the institution of this action) included in the gross estate one-half of the total value of the common stocks, or approximately $292,000 and one-half of the total value of the Government bonds, or approximately $22,000. In computing the marital deduction for determining the net taxable estate, the executors included in the deduction the sum of $146,000, representing the widow's one-half of the corporate securities in the probated estate, and the sum of $11,000, representing her one-half of the Government bonds. These were disallowed by the Commissioner. Plaintiff filed a claim for refund, which was rejected, and thereafter instituted this action.

Four questions are posed to channel the ensuing discussion:

1. Whether the corporate securities registered in the name of decedent and his brother as joint tenants with rights of survivorship qualify for the marital deduction.

2. Whether Government bonds registered in the name of decedent or his brother or his sisters qualified for the marital deduction.

3. Whether the value of property passing to the surviving spouse which qualifies for the marital deduction should be reduced by one-half of the federal estate taxes in determining the amount of the allowable marital deduction.

4. Whether the issue relating to such reduction was embraced in plaintiff's timely claim for refund.

*First.* With respect to the common stocks, if there were no relevant facts in addition to those stated hereinabove, this issue would be resolved by the clear language of the statute.[1] Under 26 U.S.C.A. § 2056(a) for property to qualify for the marital deduction it must have passed "from the decedent to his surviving spouse" and under 26 U.S.C.A. § 2056(d) where a disclaimer of an interest in property is made by any person other than the surviving spouse, that interest is deemed to have passed from the decedent to the person who made the disclaimer and not from the decedent to the surviving spouse.

Furthermore, the statute provides that a property interest devolving upon any person through survivorship-ownership is considered as having passed from the decedent to such survivor. Thus, in computing the marital deduction, the value of the securities actually received by the surviving spouse is considered as having been received from the surviving co-owner and not from the decedent and cannot qualify as part of the marital deduction.[2]

1. Levenson v. United States, 157 F.Supp. 244, 248 (N.D.Ala.1957).

2. The relevant parts of Section 2056 are as follows:

 (a) *Allowance of Marital Deduction.* —For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsec-

But the matter does not rest there. Plaintiff's contention that the beneficial, as opposed to the legal, interest in one-half of the common stock passed from the decedent to his surviving spouse, thereby qualifying for the marital deduction under the statute and regulations,[3] on principles either of a constructive or resulting trust, requires an evaluation of the facts in depth. And, since neither the statute nor the regulations define when or under what circumstances an interest will be considered as held in joint ownership with right of survivorship, it becomes necessary to resort to local law to determine the character of the interests of the two brothers in the stock and specifically whether at the time of decedent's death it was held in joint tenancy with right of survivorship.[4]

The evidence unfolds a saga of rugged individualism in rural America. The grandfather of the brothers opened a general mercantile store in the little town of Fayette, Alabama, in 1843. After his death, their father continued its operation. When the brothers became of age, their father took them into a partnership with him under the name of T. H. Robertson & Sons. He had also organized a small state bank in Fayette.

Upon the death of their father in 1936, the two brothers inherited equally their father's interest in the mercantile business and the stock in the bank.[5] Thence-

---

tions (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property *which passes or has passed from the decedent to his surviving spouse*, but only to the extent that such interest is included in determining the value of the gross estate.

\* \* \* \* \*

(d) *Disclaimers.*—

(1) *By surviving spouse.*—If under this section an interest would, in the absence of a disclaimer by the surviving spouse, be considered as passing from the decedent to such spouse, and if a disclaimer of such interest is made by such spouse, then such interest shall, for the purposes of this section, be considered as passing to the person or persons entitled to receive such interest as a result of the disclaimer.

(2) *By any other person.*—If under this section *an interest would, in the absence of a disclaimer by any person other than the surviving spouse,* be considered as passing from the decedent to such person, and *if a disclaimer of such interest is made by such person* and as a result of such disclaimer the surviving spouse is entitled to receive such interest *then such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer,* in the same manner as if the disclaimer had not been made.

(e) *Definition.*—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

\* \* \* \* \*

(5) Such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

\* \* \* \* \*

[Emphasis added.]

3. It is expressly provided in Treas.Reg. § 20.2056(e)–2 with respect to the definition of "passed from the decedent to his surviving spouse" that:

A property interest is considered as passing to the surviving spouse only if it passed to her as *beneficial owner,* except to the extent otherwise provided in §§ 20.2056(b)–5 and 20.2056(b)–6 in the case of certain life estates and insurance and annuity contracts with powers of appointment. *For this purpose, where a property interest passed from the decedent in trust, such interest is considered to have passed from him to his surviving spouse to the extent of her beneficial interest therein.* The deduction may not be taken with respect to a property interest which passed to such spouse merely as trustee, or subject to a binding agreement by the spouse to dispose of the interest in favor of a third person.

[Emphasis added.]

4. Kidd v. Patterson, 230 F.Supp. 769, 772 (N.D.Ala.1964).

5. Item Fourth of their father's will provides as follows:

"I hereby give, devise and bequeath to my said sons, T. H. Robertson, Jr. and John C. Robertson, the remaining portion left after the bequest provided in item Three of this my last will has

forth, they conducted all of their business as equal partners. They established two partnership bank accounts at their bank, described respectively as "T. H. Robertson Mercantile Account" (store account) and "T. H. and J. C. Robertson Account" (non-store account). They deposited their mercantile store receipts in the store account and their receipts from farming, timber sales, and, later, from sales of common stock in the non-store account. Neither of these partnership checking accounts was in such form as to create a joint tenancy with right of survivorship. From time to time funds were transferred from one account to the other. For example, in the fall of the year, in order to finance substantial purchases of cotton, funds were transferred from the non-store account to the store account. When the cotton was sold the proceeds were restored to the non-store account.

In 1942 the brothers opened a trading account with Merrill Lynch, Pierce, Fenner & Beane. Upon the recommendation of their broker, this account was opened as a joint one with the right of survivorship. All stocks purchased through such account were issued to "T. H. and J. C. Robertson, joint with right of survivorship." Such purchases were made by checks or drafts drawn upon the non-store account and proceeds realized from the sales thereof were deposited in such account.

All stock certificates were reflected on the partnership books as partnership assets and were kept in the partnership safe with other partnership property of value. All dividends from the stocks and all gains and losses on the sales of the stocks were reported on their federal partnership income tax returns and the expenses of such sales were deducted thereon as partnership expenses. The decisions jointly made by the brothers as to when to buy and sell stock and how much to invest therein through their trading account were based both on partnership business and market considerations.

The amount of assets which the two brothers had in their stock account fluctuated. At times a large part of their assets consisted of jointly held stock while at other times they had little or nothing invested in such stocks. This pattern of fluctuation continued to the date of Thomas' death. At the time of his death he had been extremely ill for more than one year and realized that he could not recover. At the time he executed his will in April, 1954, containing the language set forth hereinabove, and again in September, 1955, when he executed a new will, identical in all respects except for the nomination of Tom Lindsay as a co-executor at the request of his brother, John, the principal asset of his estate was the stock purchased through the above-described account.

John read both wills at his brother's request and signified his understanding of their terms and the intentions expressed thereby. His own will was identical

---

been carried out, of which I may die seized and possessed, of every kind, character and description, whether real, personal or mixed, or in and to which I may have any right, title or interest, wherever situated, to have and to hold absolutely, forever, with full powers to exchange, convey, dispose of or handle in any manner my said executors shall see fit and proper. In order that I may not be misunderstood, it is my will and desire that this bequest made in this paragraph shall be a joint one, share and share alike, except in case of death or incompetence of one of my said sons, when the other shall have the absolute right, title and interest herein provided for them jointly."

Thereafter the brothers entered into a clumsily drafted agreement dated July 2, 1954, which, after reciting the above-quoted provisions of their father's will, proceeded as follows:

"Now therefore in consideration of the premises and in compliance with the terms of said will Thomas H. Robertson, Jr. and John C. Robertson hereby grant, transfer, set over, convey and assign unto Thomas H. Robertson, Jr. and John C. Robertson jointly, to each an undivided one-half interest, all the property of every kind and description owned, possessed or enjoyed by the said Thomas H. Robertson [Sr.] at the time of his death, or which may have subsequently accrued to his estate."

in all substantial respects. Each brother was fully informed of the property holdings of the other and each clearly intended that his devisees would inherit one-half interest in property, including stock, owned jointly by them. Neither the brothers nor their father consulted a lawyer about any of the wills or conveyances described above. All, except the stock certificates, were prepared by Tom Lindsay, a layman. Neither brother had any conception of the difference between a tenancy in common and a joint tenancy with right of survivorship. At the conclusion of the oral testimony, the court announced from the bench that there was found to have been a tacit understanding between John and Thomas that, regardless of the legal form in which the stock certificates were registered, the estate of the first brother to die would be entitled to one-half of the stocks so held.

Immediately after his brother's death, John treated one-half of the jointly held stocks as well as one-half of all other partnership property as belonging to his deceased brother's estate. He has treated such estate as an equal partner with him in carrying on the same businesses and enterprises which he and his brother had conducted. From time to time he has sold all of the stocks which were jointly owned by him and his brother at the latter's death and has deposited the proceeds in the non-store account of the partnership composed of himself and his brother's estate.

He has continued to invest the funds of the new partnership in stocks through a *Merrill Lynch* account, which, on the advice of his broker, is set up in his name alone, with the result that the certificates of stock purchased through this account are similarly registered. However, he has consistently acknowledged and maintained that one-half belongs to him and one-half to his brother's estate.

■■ Upon careful consideration of the foregoing facts and permissible inferences to be drawn therefrom, the court concludes that the joint tenancy with right of survivorship in the corporate stock in question, arising from the form in which the certificates were cast under the provisions of Code of Alabama, tit. 47, § 19 (1940) (Recomp. 1958), was severed, terminated or abandoned prior to the death of the decedent either by the agreement of the brothers or by their conduct in devoting such securities to the partnership business. While no Alabama case has been cited in briefs, or found by independent research, to support this proposition, it is consistent with decisions from other jurisdictions [6] which this court predicts Alabama will follow under similar circumstances. Assuming termination of the joint tenancy and its conversion into a tenancy in common, it necessarily follows that the incident of survivorship was effectively terminated prior to the decedent's death. Consequently, the decedent's interest in the stock held in common passed absolutely to his estate and to his surviving spouse upon her dissent from his will.

■ The subsequent re-registration by John, at the suggestion of his broker, of such stocks from joint ownership to himself individually does 'not affect the result. For although the naked legal title thereto was vested in John, he held the one-half interest of his brother in constructive trust for the benefit of his estate and his surviving widow.

■ Again assuming, *arguendo*, that the joint tenancy was not severed, terminated or abandoned prior to the death of Thomas, the court finds that

---

6. Bird v. Stein, 102 F.Supp. 399 (S.D.Miss. 1952), rev'd 204 F.2d 122 (5th Cir. 1953); In re Ogier's Estate, 175 Neb. 883, 125 N.W.2d 68, 74 (1963); County of Fresno v. Kahn, 207 Cal.App.2d 213, 24 Cal.Rptr. 394, 397 (1962); Brodzinsky v. Pulek, 75 N.J.Super. 40, 182 A.2d 149 (1962); Carson v. Ellis, 186 Kan. 112, 348 P.2d 807 (1960); Williams v.

Dovell, 202 Md. 351, 96 A.2d 484 (1953); McDonald v. Morley, 15 Cal.2d 409, 101 P.2d 690, 129 A.L.R. 810 (1940); Williams v. Hensman, 1 Johns & H. 546, 70 Eng.Reprint 862 (1861); Annot., "What acts by one or more of joint tenants will sever or terminate the tenancy," 64 A.L.R.2d 918, 945–52 (1959); 48 C.J.S. Joint Tenancy § 4, at 928.

there existed between the brothers an implied understanding or agreement that the beneficial ownership of Thomas' undivided interest in such stocks would be in Thomas' estate and held by John, as executor, in trust for the widow and son in accordance with Thomas' will. Thus, although legal title vested in John by virtue of the right of survivorship incident to the joint tenancy, the equitable title and hence beneficial ownership vested in the estate immediately upon the death of Thomas. Under Alabama law and the authorities generally a constructive trust arose as of decedent's death and would have been enforceable should John have failed to perform it.[7]

■ In the alternative, the Alabama cases would impress upon the stocks in question, which were purchased with partnership funds and which were held and treated as partnership property both before and after the death of Thomas, a resulting trust in favor of his estate.[8]

■ It follows, and the court so holds, that the corporate securities in question qualified for the marital deduction under the statute and regulations.

■ *Second.* With respect to the government bonds, the matter stands differently, for federal, not state, law is controlling. Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). Section 315.5 of Treasury Regulations gov-

erning United States Savings Bonds[9] stipulates that the form of registration of these bonds must express the actual ownership and interest. Again, section 315.61 of such Regulations[10] provides that, if either co-owner dies without the bond having been presented for payment, the survivor will be recognized as the sole and absolute owner. As noted in *Free*, "The clear purpose of the regulations is to confer the right of survivorship on the surviving co-owner. Thus, the survivorship provision is a federal law which must prevail if it conflicts with state law." 369 U.S. 668, 82 S.Ct. 1093.

■ Notwithstanding the fact that there may have been a constructive or resulting trust, the brother or sisters would be the alternative owners of these bonds, not the decedent or his estate, and therefore they did not pass from the decedent to the surviving spouse as is required by the statute. Accordingly, the estate is not entitled to a marital deduction represented by the amount of the bonds received by the surviving spouse.

■ Plaintiff's reliance upon Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964) is misplaced. Contrary to his contention it did not purport to overrule *Free* or cast doubt upon its authority. *Yiatchos* stands for the proposition that the Treasury Regula-

7. E.g., Reed v. Commissioner of Internal Revenue, 36 F.2d 867, 868–869 (5th Cir. 1930); Omaha Nat. Bank of Omaha, Neb. v. Federal Reserve Bank, 26 F.2d 884, 887 (8th Cir. 1928); Lashley v. Lashley, 212 Ala. 255, 102 So. 229 (1924); Moore v. Campbell, 113 Ala. 587, 21 So. 353 (1897); Barrell v. Hanrick, 42 Ala. 60 (1868); Davis v. Cummins, 195 S.W. 752 (Mo.Ct.App.1917); Prondzinski v. Garbutt, 10 N.D. 300, 86 N.W. 969 (1901); Amherst College v. Ritch, 151 N.Y. 282, 323–324, 45 N.E. 876, 37 L.R.A. 305 (1897); Bogert, Trust and Trustees § 499, at 289–91; 4 Scott on Trusts § 488.

8. Cf. Chandler v. United States, 177 F. Supp. 565 (D.N.H.1959); McKleroy v. Musgrove, 203 Ala. 603, 608, 84 So. 280 (1919); Abernathy v. Moses, 73 Ala. 381

(1882); Little v. Snedecor, 52 Ala. 167, 169 (1875); Lang's Heirs v. Waring, 25 Ala. 625 (1854); 68 C.J.S. Partnership § 72, at 510.

9. In pertinent part section 315.5 reads as follows:

"United States Savings Bonds are issued only in registered form. The form of registration used must express the actual ownership of and interest in the bond and * * * will be considered as conclusive of such ownership and interest."
31 C.F.R. § 315.5.

10. Section 315.61 provides as follows:—
"If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner. * * * *"

tions are not to be construed to make impossible relief from fraud. But that principle is inapplicable under the facts of this case. Thomas was the co-owner who registered these bonds and his estate cannot be heard to protest title in John or the sisters. Only a co-owner whose property was unknowingly appropriated by another co-owner may find a haven in *Yiatchos*.

 *Third.* Relying upon the provisions of 26 U.S.C.A. § 2056(b) (4) [11] and Treasury Regulations 20.2056–4(c),[12] the Commissioner reduced the marital deduction allowable for computation of the estate tax by one-half of the estate taxes. In this there was manifest error. Having dissented from her husband's will, the surviving wife was not obligated under Alabama law to pay any part of the state and federal estate taxes.

The share of her husband's estate to which her dissent from his will entitled her is prescribed by Code of Alabama, tit. 16 § 10 (1940) (Recomp. 1958). Thereunder with only one son surviving, her portion was one-half of the personal estate "after the payment of debts and charges against the estate." The priority of such debts and charges to be paid

before the widow's share is computed is spelled out in Code of Alabama, tit. 61, § 218 (1940) (Recomp. 1958). Under this section the Supreme Court of Alabama has held that taxes assessed subsequent to the death of the decedent, e. g. estate taxes, are not preferred claims. Pryor v. Davis, 109 Ala. 117, 19 So. 440 (1895).

Moreover, Code of Alabama, tit. 51, § 449(1) (1940) (Recomp. 1958), which deals specifically with the payment of state and federal estate taxes, provides in pertinent part:

"Unless the decedent directs otherwise in his will, all estate taxes, whether state or federal, payable by reason of the death of the decedent, shall be paid by the executor or other personal representative out of the estate property, and shall be a charge against the *residue* thereof * * *." [Emphasis added.]

The residue out of which this statute requires that such taxes shall be paid is that part of the estate remaining after the payment of the preferred claims, the statutory share of a dissenting widow, and specific, general and demonstrative legacies.[13]

---

11. Section 2056(b) (4) provides in part:
"In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—
"(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest * * *."

12. Treas.Reg. 20.2056(b)–4(c) provides in part:
"(1) In the determination of the value of any property interest which passed from the decedent to his surviving spouse, there must be taken into account the effect which the Federal estate tax, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of the property interest.
"* * * (4) If the decedent bequeaths his residuary estate, or a portion of it, to his surviving spouse, and his will contains a direction that all

death taxes shall be payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, is based upon the amount of the residue as reduced pursuant to such direction. If the residuary estate, or a portion of it, is bequeathed to the surviving spouse, and by the local law the Federal estate tax is payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, may not exceed its value as reduced by the Federal estate tax. Methods of computing the deduction, under such circumstances, are set forth in supplemental instructions to the estate tax return."

This section and this regulation are not applicable where the widow dissents because the widow's share is not paid out of the residue, but is a priority inheritance payable before specific, general and demonstrative bequests and payable before the determination of the amount of the residue.

13. Accord, 96 C.J.S. Wills § 705, p. 75.

*Fourth.* There remains defendant's insistence that plaintiff did not raise the issue of the reduction of the marital deduction to the extent of one-half of the federal estate taxes in the claim for refund and therefore cannot raise it in this proceeding by virtue of the provisions of 26 U.S.C.A. §§ 6511 and 7422. The court is of the opinion that the claim for refund was sufficiently broad to have led the Commissioner in his investigation of the merits of the claim to a consideration of this issue.

By the original claim for refund the Commissioner was informed that the widow had dissented from the decedent's will and that the plaintiff claimed as a marital deduction the amount legally due her by reason thereof. That information required a reference to the Alabama statutes identified in part three of this opinion which would have produced the purely legal conclusion that upon dissent from her husband's will estate taxes are not deductible from the widow's interest. No more specificity is required by the decided cases.[14]

The court holds that the claim for refund was sufficient to require the Commissioner to compute the correct tax by not subtracting from the marital deduction the amount of one-half of the estate taxes.

After recomputation in conformity with this opinion a judgment will be entered in favor of plaintiff in the amount to which he is shown to be entitled.

---

14. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 77 L. Ed. 619 (1933); Thompson v. United States, 332 F.2d 657 (5th Cir. 1964); Standard Lime & Cement Co. v. United States, 329 F.2d 939, 942–943, 165 Ct.Cl. 180 (1964); Hartley v. United States, 252 F.2d 262 (5th Cir. 1958); Burrell v. Fahs, 232 F.2d 163 (5th Cir. 1956); Keneipp v. United States, 87 U.S.App. D.C. 242, 184 F.2d 263 (D.C.Cir.1950); Pink v. United States, 105 F.2d 183, 187 (2d Cir. 1939); Caswell v. United States, 190 F.Supp. 591, 593 (N.D.Cal.1960); Continental Foundry & Machine Co. v. United States, 159 F.Supp. 608, 613, 141 Ct.Cl. 604 (1958); National Forge & Ordnance Co. v. United States, 151 F. Supp. 937, 941, 139 Ct.Cl. 204 (1957); New Oakmont Corp. v. United States, 86 F.Supp. 897, 901, 114 Ct.Cl. 671 (1949); 10 Mertens, Law of Federal Income Taxation § 58.17, at 40 n. 10 (1964 Rev. ed.). Compare: Alabama By-Products Corp. v. Patterson, 258 F.2d 892 (5th Cir. 1958) and Carmack v. Scofield, 201 F.2d 360 (5th Cir. 1953) wherein the suit claims introduced issues not necessarily embraced in or germane to the original claims and which were wholly repugnant to the basis of the claims. Moreover, in both the new issue involved the determination of new factual issues.