LaRamoRE, Judge,
delivered the opinion of the court:
Plaintiff, Continental Foundry & Machine Company, sues to recover claimed overpayments of income and excess profits taxes and also interest on a previously allowed excess profits tax overpayment. Plaintiff’s first amended petition contains three counts. The parties have stipulated that with respect to the second and third counts the plaintiff is entitled to recover $5,052.94 (finding 17) and $3,242.95 (finding 18), and judgment will be entered to that effect. The remaining first count of plaintiff’s petition involves the question of whether or not plaintiff is entitled to a refund of income and excess profits taxes for the fiscal year ended November 30, 1945, by reason of a net operating loss deduction resulting from a carry-back of a net operating loss sustained in 1946.[1]
The determination of plaintiff’s right to recover hinges solely on the proper method of computing the available net operating loss carry-back as provided in section 122 (b) (1) of the Internal Revenue Code of 1939.[2] The facts necessary to resolve this issue are as follows:
Plaintiff, an accrual basis taxpayer, filed for the taxable year 1944 tax returns showing accrued net income of $13,759,-511.29 and $9,921,819.84 excess profits tax accrued thereon. *607 This latter amount was paid or credited in installments, the last payment having been made on November 13, 1945. On July 23,1945, the plaintiff and the War Department entered into a renegotiation agreement on account of excessive profits realized by the plaintiff on war contracts with the Government for the year 1944. Under section 3806 of the Code, plaintiff was credited with the amount of taxes paid with respect to the 1944 excessive profits and the difference between the credit and the excessive profits was paid by the plaintiff to the Government. Of the total credit for taxes paid on the renegotiated profits, $4,527,288.72 represented excess profits tax paid for the year 1944. In 1952 plaintiff received a renegotiation rebate and pursuant to section 403 (a) (4) (D) of the Renegotiation Act of 1942, as amended, 50 U. S. C. App. 1191, there was charged against the rebate an amount equal to the previous credit for taxes paid. Of the charge, $181,-586.40 was due to credit for 1944 excess profits tax paid. Thus the net reduction of 1944 excess profits tax by reason of renegotiation amounted to $4,345,702.32. After all adjustments, plaintiff’s excess profits tax liability for 1944 was finally determined by the Commissioner of Internal Revenue to be $4,528,628.22.[3]
For 1945 plaintiff reported a net income of $9,231,815.67 and paid excess profits tax as shown on its excess profits tax return in the amount of $6,239,925.40. In 1948 plaintiff’s excessive profits for 1945 were renegotiated and it was credited under section 3806 with $2,273,576 in excess profits tax paid against the excessive profits so determined. As a result of the renegotiation and other adjustments, plaintiff’s excess profits tax liability for 1945 was finally placed at $4,221,887.18.
In 1946 plaintiff suffered a net operating loss in the amount of $673,724. The following table shows plaintiff’s net income per return, adjustments, and net income as finally determined by the Commissioner for the years 1944, 1945, and 1946.
*608 Net income (loss) 1944 1945 1946
per return-$13,759,511.29 $9,231,815.67 $(519,191.14)
Adjustments:
Renegotiations of excessive profits- (6,153,086.00) (3,272,027.00) —
Other adjustments- (172,884.49) 353,918.58 (154,670.36)
Net income (loss) before net operating loss deductions- $7,433,540.80 $6,313,707.25 $(673,861.50)
The Commissioner determined and allowed a $673,092.63 deduction by reason of the net operating loss for 1946', adjusted according to statute, to be carried back and used as a net operating loss deduction in 1944.[4] In so doing he further determined that the loss carry-back deduction was completely used up in 1944 and not available as a carry-back against 1945 income. This is precisely the issue before the court, inasmuch as the plaintiff contends that under sections 122 (b) (1) and 122 (d) (6) it is entitled to use the full amount of the allowed 1946 net operating loss as a deduction in 1945 as well as in 1944.
Section 122 (b)l (1) provides that a net operating loss for years after December 31, 1941, shall be a net operating loss carry-back for each of the two preceding taxable years except “that the carry-back in the case of the first preceding taxable year [1945] shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year [1944] computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss.”
As applied to this case, section 122 (b)' (1) means that in order to determine if there is any available net operating loss for carry-back to 1945, the net income for 1944, as adjusted by subsections (d) (1), (2), (4), and (6), must be subtracted from the net operating loss. The excess, if any, is then ap *609 plied as a deduction against 1945 income. The controversy here centers squarely on how much the 1944 income will be adjusted by the deduction allowed in subsection (d) (6) which provides:
There shall be allowed as a deduction the amount oi tax imposed by Subchapter E [excess profits tax] of Chapter 2 paid or accrued within the taxable year, * * *. [Italics supplied.]
As we have seen, plaintiff reported net income in excess of $13,000,000 for 1944 and accrued and paid excess profits taxes in excess of $9,000,000. By renegotiation and other adjustments, these figures were reduced to $7,433,540.80 and $4,528,628.22, respectively. The Commissioner in applying sections 122 (b)l (1) and (d) (6) subtracted the adjusted excess profits tax from the adjusted net income. This left a figure far in excess of the 1946 net operating loss leaving nothing to be used as a carry-back to 1945.
However, in Lewyt Corp. v. Commissioner, 349 U. S. 237, 242, the Supreme Court held that the excess profits tax to be deducted from the second preceding taxable year’s net income was not the tax as finally determined, but the tax accrued “in accord with the normal accounting concepts relevant to the accrual basis.” Further, that “[e] vents and transactions of later years, irrelevant to a determination of income on the accrual basis, do not warrant alteration of the figure computed under § 122 (d) (6) for the year in question.” Thus, if plaintiff properly accrued over $9,000,000 in excess profits tax for 1944, it may deduct this amount from the finally determined net income[5] for that year in arriving at the net operating loss carry-back available for use in 1945. Since the final 1944 net income is less than the accrued excess profits tax for that year there would be nothing to reduce the net operating loss carry-back and it would all be available for use in 1945. This naturally results in the use of the same deduction for both the first and second preceding taxable years and a double benefit to the taxpayer, since the 1946 net operating loss had already been applied as a *610 carry-back deduction to 1944 income. Such a result was both recognized and approved by the Supreme Court in Lewyt.
Defendant concedes, as it must, that the plaintiff presents a case very much like Lewyt, but contends that the accrual of excess profits tax on profits later renegotiated should not be considered as part of the tax accrued for the purposes of section 122 (d) (6). Under the Lewyt decision only the excess profits tax properly accrued could be considered in applying the section 122 (d) (6) deduction against income of the second preceding taxable year. Was it therefore proper for the plaintiff, an accrual basis taxpayer, to accrue tax on income it was later to lose by reason of renegotiation ? We think that it was and that the Supreme Court so held in deciding the Lewyt case.
It is true, as defendant points out, that the Supreme Court in its majority opinion did not say in so many words that excess profits tax on profits later renegotiated were properly accruable, but clearly that is what they had to hold in deciding the case. As pointed out by Mr. Justice Frankfurter in his dissenting opinion, the taxpayer in that case was subjected to renegotiation which created a reduction in excess profits tax by reason of the section 3806 credit, and it was that credited tax which the majority held was properly accrued. This was not a “Question [ ] which merely lurk[s] in the record,” Webster v. Fall, 266 U. S. 507, 511, so as to be the proper subject of further consideration by lower courts.
Renegotiation of profits occurs after the profit is made and the tax paid or accrued. Under the annual accounting system a taxpayer is required to accrue not the tax ultimately found to be due after adjustments, but the amount based upon facts appearing at the time the income must be reported and the tax paid, Security Flour Mills Co. v. Commissioner, 321 U. S. 281. A taxpayer may feel, or even know, that he is subject to renegotiation, but he would not be justified in failing to accrue the tax shown to be due before that adjustment is determined, Holmes Projector Co. v. United States, 123 C. Cls. 278, cert. denied, 344 U. S. 912, rehearing denied, 345 U. S. 914; Junior Toy Corp. v. United States, 126 C. Cls. 681, cert. denied, 348 U. S. 815. It necessarily *611 follows that plaintiff properly accrued the tax on profits later renegotiated.
The defendant urges that in National Forge & Ordnance Co. v. United States, No. 132-56, decided May 8,1957, 139 C. Cls. 204, this court approved a departure from the annual accounting system with regard to renegotiated profits and that such a departure is applicable here. That case is clearly distinguishable on its facts and has no application whatsoever to the present situation. There the taxpayer was renegotiated before it filed its return, and under I. T. 3611 (1943 Cum. Bull. 978) was permitted to reduce its income by the amount of repayment determined to be due the Government in computing its taxable income for the year involved. This was true even though the actual repayment was not made until a subsequent year. I. T. 3611 has no application to the present plaintiff since it was not renegotiated until after it accrued the tax and filed its return. Its situation falls clearly within the rule laid down by the Supreme Court in Leioyt, and National Forge da Ordna/nce in no way creates a conflict.
The defendant next contends that plaintiff is not entitled to recover in this court because “[t]he grounds for recovery of taxes for the year 1945 as set forth in the amended petition are clearly at variance with the grounds upon which the refund claims are based”. It premises this argument on the fact that the refund claim as filed with the Commissioner asked that refund be made for 1945 on the basis of a net operating loss carry-back and computed the section 122 (d) (6) deduction from 1944 net income by using the excess profits tax paid rather than accrued. We see no merit in this position.
In National Forge & Ordnance Co. v. United States, No. 132-56, decided July 12, 1957, 139 C. Cls. 222, on defendant’s motion for reconsideration, this court stated its position with extreme clarity on the sufficiency of refund claims wherein it was said:
* * * The rule of strictissimi juris is not applicable to claims for refimd. All that is required of them, as a predicate for suit in this court is that they put the Commissioner of Internal Bevenue on notice of the ground of the taxpayer’s claim that his taxes were erroneously computed. This does not have to be stated with any greater particularity than is necessary to draw the Com *612 missioner’s attention, to the claim he makes in his subsequent suit.
We think that by claiming a deduction in 1945 due to a carry-back of a net' operating loss in 1946, plaintiff filed a claim for refund upon which suit for the proper determination of a net operating loss carry-back could be predicated. Because its claim for refund computed the section 122 (d) (6) deduction on the basis of excess profits tax paid rather than accrued does not present a different fact situation which would require the Commissioner to examine other matters not germane to the dispute such as occurred in United States v. Andrews, 302 U. S. 517. Here the Commissioner’s attention was specifically directed to the method of correctly computing a net operating loss carry-back to the year in question. See also this court’s decision in Harry Ferguson, Inc. v. United States, 137 C. Cls. 137.
Finally defendant urges that if we find in favor of the plaintiff, then we should apply a “tax benefit rule” which would require inclusion in plaintiff’s 1945 and 1946 income all tax credits which were deducted under section 122 (d) (6) from 1944 net income and later refunded. This same argument was raised and rejected by the court in National Forge & Ordnance, supra. It would serve no useful purpose to repeat the arguments presented there since we adhere to that opinion. It follows that no “tax benefit” rule is applicable and no part of the credited or refunded taxes which were also the subject of a section 122 (d) (6) deduction are includible as income in any taxable year. See also Budd Company v. United States, 148 F. Supp. 792.
The parties have stipulated that the amount of recovery due plaintiff by reason of the allowance of the 1946 net operating loss as a carry-back and deduction in 1945 is $511,559.50. This together with $5,052.94 and $3,242.95 previously stipulated as due the plaintiff totals $519,855.39. Judgment will therefore be entered for the plaintiff in the amount of $519,855.39, together with interest on $516,612.44 as provided by law.
It is so ordered.
Madden, Judge; Whttaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
*613 FINDINGS OF FACT
The court makes findings of fact, based upon the stipulation of the parties, and the briefs and argument of counsel, as follows:
1. The plaintiff is a corporation organized and existing under the laws of the State of Delaware, having its principal office and place of business at East Chicago, Indiana.
2. Plaintiff keeps its books and records on the- accrual basis of accounting, and filed its Federal corporation income and declared value excess profits tax returns, income tax returns, and excess profits tax returns for each of its fiscal years ended November 30 on the same basis.
3. Plaintiff filed its Federal excess profits tax return for the fiscal year ended November 30, 1944, on April 20, 1945, with the collector of internal revenue for the district of Indiana, and paid the excess profits tax liability shown thereon to said collector on the following dates and in the following amounts:

Date of Payment Amount of Payment

February 21, 1945_$2,478, 500.00
April 20, 1945_ 1,954.96
May 19, 1945_ 2,480,454.96
August 18, 1945_ 2,480,454.96
November 13, 1945_ 2,480,454.96
Total_$9,921, 819. 84
$242,453.11 of the amount paid on November 13, 1945, consisted of a credit of postwar refund provided for by section 780 of title 26, United States Code.
4.On July 23, 1945, plaintiff entered into an agreement with the War Department under which excess profits for the fiscal year ended November 30, 1944, were determined. On November 12, 1945, plaintiff paid to the Treasurer of the United States the amount of $1,129,574.95, being the difference between the excess profits determined and the tax credits. Excess profits taxes paid by plaintiff for the fiscal year ended November 30,1944, in the amount of $4,527,288.72 were credited against excess profits determined under the provisions of section 3806 of title 26, United States Code. In accordance with the provisions of section 403 (a) (4) (D) *614 of the Renegotiation Act of 1942, as amended, 50 U. S. C. App. 1191, on March 17, 1952, there was charged against a gross renegotiation rebate to plaintiff, for said fiscal year, additional excess profits taxes in the amount of $181,586.40 imposed by reason of said renegotiation rebate. On J uly 29, 1946, plaintiff received a refund of excess profits taxes for said fiscal year in the amount of $212,627.05 (less the postwar refund credit of $21,262.70 provided by said section 780) by reason of an adjustment for accelerated amortization of emergency facilities under section 124 of title 26, United States Code. On April 10,1947, an overpayment of excess profits taxes for said ficsal year in the amount of $783,507.40, caused by a net operating loss carry-back from the fiscal year ended November 30,1946, was refunded to plaintiff (less the postwar refund credit of $78,350.74 provided by said section 780) in the amount of $353,782.68 and credited against other taxes then due and owing by plaintiff in the amount of $351,373.98. Upon a subsequent audit of plaintiff’s Federal excess profits tax return for said fiscal year ended November 30, 1944, a further overpayment of excess profits taxes for said year in the amount of $51,354.85 was determined by the Commissioner of Internal Revenue. The said overpayment was credited against other taxes then due from plaintiff on July 16,1951.
5. Plaintiff’s excess profits tax liability for the fiscal year ended November 30, 1944, was finally determined by the Commissioner of Internal Revenue to be $4,528,628.22. Said excess profits tax liability has been fully paid and satisfied by the payment described in finding 3 hereof, the adjustments described in finding 4, and the allowance by the Commissioner of Internal Revenue of a postwar refund credit of $155,862.82 pursuant to section 780 of title 26,. United States Code.
6. Plaintiff’s general ledger' account 37-22 entitled “Provision for Current Federal Tax” shows that on November 30, 1944, there was accrued on the plaintiff’s books and records total current Federal income and excess profits tax liability in the amount of $12,100,000.
7. Plaintiff filed its Federal income and declared value excess profits tax return for the fiscal year ended November *615 30,1945, on February 13,1946, with the collector of internal revenue for the district of Indiana, and paid the income tax liability shown thereon to said collector on the following dates and in the following amounts:

Date of Payment Amount of Payment

February 13, 1946-_$90,141,63
May 14, 1946_ _ 89,391.63
August 12, 1946_ _ 90,891.63
November 14, 1946 - 90,141.64
Total-$360,566. 53
'Upon subsequent audit of plaintiff’s Federal income and declared value excess profits tax return for said fiscal year, an overpayment of income taxes for said year in the amount of $796 was determined by the Commissioner of Internal Eevenue. Said overpayment was credited against other taxes then due from plaintiff on July 16,1951.
8. Plaintiff’s Federal income tax liability for the fiscal year ended November 30, 1945, was finally determined by the Commissioner of Internal Eevenue to be $359,770.53, which has been fully paid and satisfied by the payments described in finding 7 hereof.
9. Plaintiff filed its Federal excess profits tax return for the fiscal year ended November 30, 1945, on February 13, 1946, with the collector of internal revenue for the district of Indiana, and paid the excess profits tax liability shown thereon to said collector on the following dates and in the following amounts:

Date of Payment Amount of Payment

February 13, 1946_$1,559,981.35
May 14, 1946- 1,559,981.35
August 12, 1946_ 1,559,981.35
November 14, 1946_ 1,559,981.35
Total-•_$6,239, 925.40
On May 5,1948, as the result of a bilateral renegotiation of excessive profits, excess profits taxes paid by' plaintiff for said fiscal year in the amount of $2,273,576.00 were credited against excessive profits determined under the provisions of section 3806 of title 26, United States Code.
10. Upon a subsequent audit of plaintiff’s Federal excess profits tax return for the- fiscal year ended November *616 30,1945, a deficiency in excess profits taxes in the amount of $255,587.78 was determined by the Commissioner of Internal Kevenue. $162,982.46 of said deficiency was paid by plaintiff to said collector on November 15, 1949. $616.33 of said deficiency was paid by plaintiff to said collector on August 7, 1951. The remaining $91,938.99 of said deficiency was paid by credit made by said collector on July 16,1951, of refunds of other taxes then due and owing to plaintiff.
11. Plaintiff’s excess profits tax liability for the fiscal year ended November 30,1945, was finally determined by the Commissioner of Internal Revenue to be $4,221,887.18, all of which has been satisfied by the payments and adjustments described in findings 9 and 10 hereof.
12. Plaintiff filed its Federal income tax return for the fiscal year ended November 30, 1946, with the collector of internal revenue for the district of Indiana on February 13, 1947. Said return as filed by plaintiff disclosed no income tax liability for said fiscal year and reflected a net operating loss, as defined by section 122 of title 26, United States Code, for said fiscal year of $519,053.64. Upon the audit of plaintiff’s income tax return for said fiscal year, the Commissioner of Internal Revenue increased said net operating loss for said fiscal year to $673,724.00, to which plaintiff agreed.
13. On August 6, 1948, plaintiff filed with the collector of internal revenue for the district of Indiana a timely claim for refund of income taxes for the fiscal year ended November 30, 1945, in the amount of $360,566.53. On the same date, the plaintiff filed with the said collector a timely claim for refund of excess profits taxes for the fiscal year ended November 30, 1945, in the amount of $2,380,445.85. The claims for refund requested use of a net operating loss deduction based upon the carry-back of the 1946 net operating loss. The claims computed the section 122 (b) (1) adjustments to 1944 net income on the basis of excess profits tax paid rather than accrued for that year.
14. On August 30, 1951, the Commissioner of Internal Revenue mailed by registered mail to plaintiff notice of dis-allowance in full of the said claim for refund of excess profits taxes for the fiscal year ended November 30, 1945. On September 6,1951, the Commissioner of Internal Revenue mailed by registered mail to plaintiff notice of disallowance in full *617 of said claim for refund of income taxes for the fiscal year ended November 30, 1945. Plaintiff lias not received any portion of the amounts claimed in said refund claims, nor has the plaintiff been credited in any manner, for tax purposes or otherwise, with any portion of the amounts claimed in said refund claims.
15. The following table shows for each of the fiscal years ended November 30,1944 through 1946, plaintiff’s net income or loss as reported on its tax return, adjustments made by the Commissioner of Internal Revenue, and plaintiff’s net income or loss (before the application of any net operating loss deduction) as finally determined by the Commissioner of Internal Revenue, together with certain items as finally determined by the Commissioner of Internal Revenue which are material to a determination of plaintiff’s net operating loss deduction for the fiscal year ended November 30, 1945:

Fiscal year ended Nov. SO, Fiscal year ended Nov. SO, Fiscal year ended Nov. SO,

Net Income per return 101,1, 101,5 101,6
(loss)-$13,759,511.29 $9, 231, 815. 67 $(519,191.14)
Adjustments:
Renegotiations oí excessive profits_ (6,153, 086. 00) (3, 272, 027. 00)
Other adjustments_ (172, 884. 49) 353, 918. 58 (154, 670. 36)
Net income before net operating loss deduction, per supplemental report of examining officer dated December 14, 1950- 7, 433. 540. 80 6, -313, 707. 25 (673, 861. 50)
Other material items per supplemental report of examining officer dated December 14, 1950: Net operating loss deduction_ 673, 092. 63 _
Net operating loss-673, 724. 00
Normal tax net in-come_ - 899, 338. 34
Surtax net Income- - 899, 558. 34
Excess profits net come_ - 6, 313, 179.15
Adjusted excess profits net income_ - 5, 413, 887. 02
Interest on U. S. obligations wholly exempt from tax-137. 50 137. 50 137. 50
interest on U. S. obligations exempt from normal tax-220. 00 220. 00
Credit for dividends received_ 273. 87 261. 89
*618 16. Following are three schedules showing the detailed computations of the amounts of net operating loss deduction and overpayments of income and excess profits taxes for the fiscal year ended November 80,1945.
CONTINENTAL FOUNDRY & MACHINE COMPANY Computation of Net Operating Loss Deduction for Taxable Year
Ended November 30, 1945
Net operating loss for year ended November 80, 1946, per supplemental report of examining officer dated December 14,1950' [122 (a) ] __ $673, 724. 00
Less adjusted net income for year ended November 30, 1944 [122 (b) (1) (A)] :
Net income before net operating loss deduction for year ended November 30, 1944, per supplemental report of examining officer dated December 14, 1950_$7, 433, 540. 80
Interest on obligations of tbe united States ■wholly exempt from tax [122(d)(2)]_ 137. 50 $7, 433, 678. 30
Excess profits taxes accrued within year ended November 30, 1944 [122 (d) (6)]_ 9, 921, 819. 84
Adjusted net income for year ended November 30, 1944_
Net operating loss carryback to year ended November 30, 1945 [122 (b) (1) (A)]_ 673, 724. 00
Less amount by which net income for year ended November 30,1945, exceeds normal-tax net income for year ended November 30, 1945 [122 (c)]:
Interest on obligations of the United States exempt from normal tax_ 220. 00
Credit against net income for dividends received_ 261. 89
Interest on obligations of the United States wholly exempt from tax [122 (d) (2)]-137. 50 619. 39
Net operating loss deduction for year ended November 30, 1945 [122 (c)]- $673,104.61
NOTE: Material in brackets [ ] above refers to sections of title 26, United States Code.
*619 CONTINENTAL FOUNDRY & MACHINE COMPANY
Computation of Overpayment of Federal Excess Profits Taxes for Taxable Year Ended November 30,1945.
Corrected surtax net income_ $226,453. 73
Adjusted excess profits net income for the taxable year ended November 30, 1945, per supplemental report of examining officer dated December 14, 1950_ 5, 413,887.02
Corrected surtax net income before credit under section 26(e), title 26, U. S. C_ 5, 640,340. 75
80%- 4, 512,272. 60
Income tax- 90,528.70
Excess profits tax_ 4,421, 743.90
Postwar credit_ 442,174.39
Excess profits tax liability- 3,979,569.51
Tax previously paid- 4,221,887.18
Overpayment of tax_ $242,317. 67
CONTINENTAL FOUNDRY & MACHINE COMPANY
Computation of Overpayment of Federal Income Taxes For Taxable Year Ended November 30, 1945.
Normal tax net income for year ended November 30,1945, per supplemental report of examining officer dated December 14, 1950_$899,338.34
Net operating loss deduction_ 673,104.61
Corrected normal tax net income_ 226,233. 73
Normal tax (24%)_ 54,296.10
Surtax net income per supplemental report of examining officer- 899, 558.34
Net operating loss deduction_ 673,104.61
Corrected surtax net income_ 226,453. 73
Surtax (16%)- 36,232.60
Total normal tax and surtax_ 90, 528.70
Tax previously paid_ 359, 770.53
Overpayment of tax. $269,241. 83
*620 17. Plaintiff is entitled to an additional deduction for Federal capital stock taxes accrued for the fiscal year ended November 80, 1944, in the amount of $6,250.00. Said additional deduction results in an overpayment of plaintiff’s excess profits taxes for said fiscal year in the amount of $5,052.94.
18. Plaintiff is entitled to recover interest in the amount of $3,242.95 on an overpayment of plaintiff’s excess profits taxes for the fiscal year ended November 30,1944.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that plaintiff recover of and from the United States five hundred nineteen thousand eight hundred fifty-five dollars and thirty-nine cents ($519,855.39), together with interest on $516,612.44 as provided by law.

 During all of tlie period here Involved plaintiff reported Its income on a fiscal year basis which ended on November 30 of each year. We will speak of the year in which the fiscal period ends as the taxable year.

 All statutory references are to sections of the Internal Revenue Code of 1939 unless otherwise designated.

 Certain other adjustments, including a refund of excess profits tax by reason of an adjustment for accelerated amortization of emergency facilities and a net operating loss carry-back, resulted in refunds of excess profits tax paid for 1944. These items of adjustment do not affect the result in this case and will not be dealt with.

 Section 23 (s) provides for a deduction in case of a net operating loss computed under section 122.

 In Lewyt It was conceded by the parties that the net income as need in section 122 (b) (1) was the net income as finally determined and not the net income as reported on the return. Thus the renegotiated profits are reflected by a corresponding reduction in net income.