Laramore, Judge,
delivered the opinion of the court:
This is a suit for refund of income and excess profits tax for the year 1945 and also for a refund of interest on a deficiency in excess profits tax for the same year.
Plaintiff an accrual basis taxpayer suffered a net operating loss in 1946 and seeks a determination as to the amount, if any, of this 1946 loss that is available as a net operating loss carryback to 1945 after the same loss has already been carried back and used as a deduction against 1944 income. This case involves a determination of the correct adjustment to be made to the net income of 1944 as required by section 122(d) (6) of the Internal Revenue Code of 1939 and presents no issues significantly different from those disposed of favorably to the plaintiffs in Continental Foundry & Machine Company v. United States, 141 C. Cls. 604, and National Forge & Ordnance Co. v. United States, 139 C. Cls. 204, 222.
In Continental Foundry we held that under the Supreme Court’s decision in Lewyt Corp. v. Commissioner, 349 U. S. 237, an accrual basis taxpayer was entitled to deduct from its finally determined net income of the second preceding taxable year, from that in which the loss occurred, the amount of excess profits tax properly accrued. Adjustments occurring in a later year by reason of renegotiation of war profits were not to be considered in computing the excess profits tax to be deducted under section 122(d)(6). The excess of the net operating loss over the net income of the second preceding taxable year, after deducting the accrued *509 excess profits tax, was then available as a net operating loss carryback to tbe first preceding taxable year. In this case 1945 is the first preceding taxable year from the year in which the loss occurred.
The only difference between this case and Continental Foundry is that the adjustment to plaintiff’s excess profits tax for the second preceding taxable year came as a result of an increased accelerated amortization deduction rather than renegotiation. However, both cases involved events happening after the tax in question had been accrued. That is all that is necessary to meet the test laid down by the' Supreme Court in Lewyt Corp., supra. Here the increased accelerated amortization deduction became available only after the President of the United States terminated the “emergency period” late in 1945. After this plaintiff filed an application and was allowed an increased deduction for accelerated amortization of its emergency facilities. This resulted in a refund of excess profits tax accrued for 1944. Under the decisions of the Supreme Court and this court a section 122(d) (6) deduction may not be reduced by the amount of the refund. This is so even though the net income from which the section 122(d) (6) deduction is made does reflect the adjustment. It necessarily follows that plaintiff in determining its net operating loss carryback to 1945 may deduct from it finally determined net income for 1944 the amount of excess profits tax accrued notwithstanding the subsequent adjustment created by the allowance of an increased accelerated amortization deduction. The excess of the 1946 net operating loss over the 1944 net income as adjusted is then available as a net operating loss carryback to 1945.
The Government’s affirmative defense claiming that a “tax benefit” rule should be applied if plaintiff is allowed to recover was raised and. determined adversely to the Government in National Forge & Ordnance, supra, Continental Foundry, supra, and Lockheed Aircraft Corp. v. United States, this day decided ante, p. 505. See also Budd Company v. United States, 252 F. 2d 456. It would serve no useful purpose to again repeat those contentions. Upon the authority of the above cited cases plaintiff is entitled to recover, together with interest as provided by law, and judg *510 ment will be entered to that effect. The amount of recovery will be determined pursuant to Bule 38 (c).
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDING OF FACT
The court, having considered the facts as stipulated by the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a validly existing corporation organized in 1916 under the laws of the State of New York. Its principal executive office is located at One Broadway, New York, New York.
2. Plaintiff keeps its books and files its Federal income and excess profits tax returns on the accrual basis of accounting and by calendar years.
3. On or about September 13, 1946, pursuant to an extension of time granted by the then Commissioner of Internal Revenue, plaintiff timely filed a corporation income and declared value excess profits tax return for the calendar year ended December 31,1945, with the Collector of Internal Revenue for the Second District of New York. Said return reported an income tax liability of $710,907.66. No net operating loss deduction was allowable to plaintiff in this return when it was filed.
4. On or about September 13, 1946, pursuant to an extension of time granted by the then Commissioner of Internal Revenue, plaintiff timely filed a corporation excess profits tax return for the calendar year 1945 with the Collector of Internal Revenue for the Second District of New York. Said return reported an excess profits tax liability of $2,711,186.30.
5. On or about March 15, 1947 plaintiff timely filed its corporation income tax return for the calendar year ended December 31, 1946, with the Collector of Internal Revenue for the Second District of New York showing an excess of allowable deductions over the gross income for 1946 of $8,406,938.17.
*511 6. Upon audit and examination of plaintiff’s income tax return for the calendar year 1946 by the Director of Internal Revenue for the Lower Manhattan District, the excess of allowable deductions over the gross income for 1946 was determined to be $8,441,490.07.
7. Upon audit of plaintiff’s income and excess profits tax returns for the calendar year 1945, the Director of Internal Revenue for the Lower Manhattan District proposed to adjust plaintiff’s net income for the calendar year 1945 at $5,494,611.38, allowing a net operating loss deduction of only $85,550.18 (based on a net operating loss for 1946 of $8,441,352.57), to determine its income tax liability for 1945 at $1,252,315.29 and to adjust plaintiff’s excess profits tax liability for 1945 at $1,346,195.79.
8. Prior to completion of the audit referred to in finding 7, plaintiff had made the following payments to the Collector of Internal Revenue for the Second District of New York in respect of income taxes for the calendar year 1945: on or about March 15,1946, $188,000.00; on or about June 13,1946, $188,000.00; on or about June 2, 1947, $612,084.04, by credit for overpayments of income taxes for the calendar year 1944, as a result of plaintiff’s sustaining a net operating loss in calendar year 1946; and on or about June 2,1947, $334,907.66 by credit for overpayments of excess profits taxes for the calendar year 1944, as a result of plaintiff’s sustaining a net operating loss in calendar year 1946.
9. Since plaintiff had thus paid the sum of $1,322,991.70 in respect of income taxes for the calendar year 1945 prior to completion of the audit referred to in finding 7, there was a conceded overpayment of not less than $70,676.41 (based on a 1945 income tax liability determination of $1,252,315.29). On or about June 15,1954, plaintiff received a Certificate of Overassessment of 1945 income taxes from the Office of the Commissioner of Internal Revenue in the amount of $70,-676.41, which amount was duly credited to plaintiff.
10. Plaintiff has paid to the Collector of Internal Revenue for the Second District of New York in respect of income tax liability for the calendar year 1945 $1,252,315.29, no part of which has been refunded to the plaintiff.
*512 11. Prior to completion of the audit referred to in finding 7, plaintiff had made the following payments to the Collector of Internal Revenue for the Second District of New York in respect of excess profits taxes for the calendar year 1945: on or about March 15, 1946, $680,000.00; on or about June 13, 1946, $680,000.00; on or about June 2, 1947, $42,8'56'.67, by credit for overpayments of income taxes for the calendar year 1944, as a result of plaintiff’s sustaining a net operating loss in calendar year 1946. Of the foregoing amounts paid by plaintiff in respect of excess profits taxes for the calendar year 1945, $112,167.47 was credited against amounts due the United States by plaintiff under recapture provisions of lump sum repair contracts between plaintiff and the United States Maritime Commission for the period November 14, 1944 through March 31, 1945.
12. Since plaintiff had paid only $1,290,689.20 as excess profits taxes for the calendar year 1945 prior to completion of the audit referred to in finding 7, there was an asserted deficiency of $55,506.59 (based on a 1945 excess profits tax liability determination of $1,346,195.79). On or about March 27, 1953, plaintiff received an assessment in respect of 1945 excess profits taxes in the amount of $55,506.59 together Avith interest thereon in the amount of $18,176.51, for a total of $73,683.10. The following payments have been made in respect of this assessment: on or about March 27, 1953, $51,-820.77, by credit for overpayment of income taxes for 1945; on or about April 3,1953, $21,862.33. On or about July 26, 1954, plaintiff received an additional assessment for interest in respect of the aforesaid excess profits tax deficiency in the amount of $713.59. The following payments have been made in respect of this assessment: on or about July 26,1954, $670.11, by credit for overassessment of interest in respect of income taxes for 1945; on or about August 5, 1954, $43.48.
13. Plaintiff has paid to the Collector of Internal Revenue for the Second District of New York or to his successor, the Director of Internal Revenue for the Lower Manhattan District, $1,346,195.79 in respect of excess profits taxes for the calendar year 1945, no part of which has been refunded to the plaintiff. In addition, plaintiff has paid to the Director of Internal Revenue for the Lower Manhattan District, the *513 sum of $18,890.10 in respect of interest on deficiencies in payment of its 1945 excess profits taxes, no part of which has been refunded to the plaintiff.
14. Plaintiff and the Commissioner of Internal Eevenue executed several timely consents on Treasury Department Form 872 which ultimately extended to December 31, 1954, the time within which the Commissioner could assess additional income or excess profits taxes for the calendar year 1945. These consents, by operation of law, extended to June 30,1955, the time within which claims for refund of income and excess profits taxes paid for the calendar year 1945 could be filed.
15. On June 27, 1955, plaintiff filed with the Director of Internal Eevenue for the Lower Manhattan District, a claim for refund of $2,598,511.08 of income and excess profits taxes, together with interest thereon as provided by law. This claim was based on the fact that, in computing the amount of plaintiff’s 1946 net operating loss that is a net operating loss carryback for 1945, net income for the calendar year ended December 31, 1944 was not adjusted for the amount of tax imposed by subchapter E of chapter 2 of the Internal Eevenue Code of 1939 paid or accrued within the calendar year 1944.
16. Under section 122 (b) of the Internal Eevenue Code of 1939, plaintiff’s net operating loss for the calendar year 1946 is a net operating loss carryback for the calendar years 1944 and 1945. The amount of the 1946 net operating loss which is a net operating loss carryback for the calendar year 1945 is the excess of the amount of plaintiff’s net operating loss for 1946 over the net income of plaintiff for the calendar year 1944, computed with the exceptions, additions and limitations provided in sections 122(d) (1), (2), (4) and (6) of the Internal Eevenue Code of 1939, and by determining the net operating loss deduction for 1944 without regard to the 1946 net operating loss. '
17. Plaintiff’s net operating loss for the calendar year 1946 was $8,441,352.57.
18. Plaintiff’s finally determined net income for the calendar year 1944 computed by determining the net operating loss deduction for 1944 without regard to the 1946 net operat *514 ing loss was $7,565,898.93 (the net income for such year as the second preceding taxable year to 1946 designated in section 122(b)(1) being unreduced under sections 122(b)(1) (B) and 122(c) for the reason that there was no net operating loss deduction for the calendar year 1944 other than with regard to the net operating loss of 1946). This figure reflects a deduction for increased accelerated amortization allowable as a result of the termination of the “emergency period” for the purpose of section 124 of the Internal Revenue Code of 1939.
19. The adjustment to net income for 1944 required by section 122(d) (1) of the Internal Revenue Code of 1939 in computing the amount of the 1946 net operating loss which is a net operating loss carryback for 1945 is zero.
20. The adjustment to net income for 1944 required by section 122(d) (2) of the Internal Revenue Code of 1939 in computing the amount of the 1946 net operating loss which is a net operating loss carryback for 1945 is the inclusion of $137.50 for interest received that is wholly exempt from taxes imposed by chapter 1 of the Internal Revenue Code of 1939.
21. The adjustment to net income for 1944 required by section 122(d) (4) of the Internal Revenue Code of 1939 in computing the amount of the 1946 net operating loss which is a net operating loss carryback for 1945 is zero.
22. Plaintiff’s net income as computed on the accrual basis for the calendar year 1944 without reference to events taking place after December 31,1944 was not less than $8,382,324.72 (the net income figure shown on plaintiff’s corporation excess profits tax return for the calendar year 1944). Plaintiff’s excess profits tax liability computed on the basis of this net income figure is $5,113,279.22 (the excess profits tax liability shown due on plaintiff’s corporation excess profits tax return for the calendar year 1944).
23. On or about September 28, 1945, the President of the United States terminated the “emergency period” for the purpose of section 124 of the Internal Revenue Code of 1939. On December 21, 1945, plaintiff elected to terminate the amortization period for its emergency facilities as of September 30, 1945. On February 8, 1946, plaintiff filed an application for tentative adjustment on Form 1140 with re *515 spect to its increased section 124 accelerated amortization deduction. On June 21, 1946, plaintiff received a refund of $636,268.08 of excess profits tax for the calendar year 1944 on account of the increased accelerated amortization deduction that became available as a result of the President’s Proclamation of September 28,1945.
24. As a result of plaintiff’s sustaining a net operating loss in 1946 and the carryback of this loss to 1944, plaintiff on June 20, 1947 received a refund of $4,447,011.14 of excess profits taxes paid for 1944.
25. By letter dated December 14, 1956, plaintiff was advised that its claim for refund of income and excess profits taxes for the year 1945 would be disallowed and that a statutory notice of disallowance would be forwarded at a later date. By letter dated January 4, 1957, the Director of Internal Revenue for the Lower Manhattan District sent to plaintiff, by registered mail, a notice of disallowance of its claim for refund of $2,598,511.08 of income and excess profits taxes for the calendar year 1945 together with interest thereon as provided by law.
26. Plaintiff is the sole and absolute owner of this claim. No transfer or assignment of the claim or of any part thereof has been made. No action other than as aforesaid has been had thereon by Congress, by any department of the Government, in the Tax Court of the United States, or in any other judicial proceeding.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to rule 38 (c)' of the Rules of this court.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due plaintiff, it was ordered October 24, 1958, that judgment for the plaintiff be entered for $2,575,641.38, with interest thereon as provided by law.