*Decision will be entered under Rule 50.*

**F. L. JACOBS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

**F. L. JACOBS COMPANY, TRANSFEREE OF PARTS MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket Nos. 56526, 56527, 69983.   Filed August 29, 1958.

*Fred R. Tansill, Esq.*, for the petitioner.
*William D. Crampton, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in the petitioner's income tax and excess profits tax as follows:

| Fiscal year ended | Docket No. | Tax | Deficiency |
|---|---|---|---|
| July 31, 1944 | 56526 | Income | $162,937.53 |
| July 31, 1945 | 56526 | Excess profits | 2,340,882.42 |
| June 30, 1945 | 56527 | Excess profits | 289,923.03 |
| July 31, 1947 | 69983 | Income | 1,384,708.54 |

Petitioner in Docket No. 56526 has conceded liability for the income tax deficiency of $162,937.53 for the fiscal year ended July 31, 1944, and it has also conceded that there are no overpayments of excess

profits taxes with respect to the fiscal years ended July 31, 1944 and 1945, under the provisions of section 722 of the Internal Revenue Code of 1939.[1]  Effect will be given to the concessions and stipulations of the parties in the Rule 50 computation.

All of ·the facts here have been stipulated and they are found accordingly.

The basic question involved is the correct method of carrying back a 1946 net operating loss to the immediately preceding year.  A second issue is presented as to whether petitioner received "tax benefit" income in 1947.  Because of our holding on these issues, other issues that are presented and argued in the briefs are not reached.

F. L. Jacobs Company, hereinafter called Jacobs, is a Michigan corporation formed on January 7, 1933, with its principal office in Detroit, Michigan.  Jacobs' income tax returns for the years here involved were filed with the then collector of internal revenue for the district of Michigan at Detroit, Michigan.  Jacobs maintained its books and records and filed its income tax returns on the basis of an accrual method of accounting, using a fiscal year ending July 31 of each year. Jacobs is a manufacturer of parts and accessories for the automobile industry, and from time to time it has formed or acquired subsidiary corporations engaged in substantially the same line of business.

Parts Manufacturing Company, hereinafter called Parts, was incorporated under the laws of Michigan and commenced business in 1937.  Its principal place of business during the years here involved was in Traverse City, Michigan.  Parts maintained its books and records and filed its Federal tax returns using an accrual method of accounting and reported on a fiscal year ending June 30 of each year. Parts filed its Federal tax return for the fiscal year ended June 30, 1945, with the then collector of internal revenue for the district of Michigan at Detroit, Michigan.

Parts originally produced and sold etched metal products.  Subsequently it manufactured clinch nuts and later outboard motor parts. In 1940 it became a parts supplier to the automotive industry.  In 1941 the stockholders of Parts agreed to sell their stock to Jacobs and in May 1942 Jacobs acquired all of the outstanding stock of Parts.  On September 24, 1946, in exchange for its stock, Parts transferred to Jacobs all of its assets subject to its liabilities.  A certificate of dissolution was filed with the Michigan Corporation and Securities Commission on the same date.  Jacobs is a transferee of the assets of Parts within the meaning of section 311.

Because the parties have, with commendable observance of our rules, stipulated all of the facts, and because the stipulation reflects agree-

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

ment as to computation figures and amounts, the issues can be framed without a detailed recitation of events.

Both Jacobs and Parts had substantial net income upon which they paid income taxes and excess profits taxes in 1944 and 1945, and both had net operating losses in 1946 in the amounts of $4,501,411.83 and $633,599.32, respectively. Much of the income of Jacobs and Parts in the year 1944 was derived from war contracts. In the year 1946 both Jacobs and Parts were involved in renegotiation proceedings that resulted in the elimination of part of the 1944 income as reported by each. In 1945 Jacobs and Parts each elected to take accelerated amortization with respect to certain facilities which further reduced the 1944 income of each. The elimination of a part of the 1944 income of Jacobs and Parts by reason of the renegotiation proceedings, and the allowance of the increased accelerated amortization deduction to each, resulted in what amounted to refunds or credits reducing the excess profits tax that had been reported by each in 1944.

The deficiencies that remained in controversy as to the year 1945 result from respondent's computation of the carryback of the losses to 1945, wherein respondent used figures that reflected adjustments because of the renegotiation proceedings and accelerated amortization. The use of such adjusted figures in the computations is the assignment of error presently before us.

We will present the issue with respect to Jacobs in Docket No. 56526.[2] Section 122 (d) provides for certain adjustments which must be made in computing the net operating loss, the net operating loss carryback and carry-forward, and the net operating loss deduction in section 122 (a), (b), and (c), respectively. We are here concerned specifically with section 122 (d) (6), which provides as follows:

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\*       \*       \*       \*       \*       \*       \*

(6) There shall be allowed as a deduction the amount of tax imposed by Subchapter E of Chapter 2 paid or accrued within the taxable year, \* \* \*

The parties agreed that, in the computation of the carryback of the net operating loss incurred in the fiscal year 1946 to the fiscal year 1945 under the provisions of section 122 (b),[3] accrued excess profits tax for

---

[2] The issue in Docket No. 56527 includes the same question, except for different figures, as in Docket No. 56526, which is the proper method of computing the carryback of a 1946 net operating loss to the fiscal year 1945. Our decision then in Docket No. 56526 on the legal issue will be dispositive of the controversy in Docket No. 56527.

[3] SEC. 122. NET OPERATING LOSS DEDUCTION.

(b) AMOUNT OF CARRY-BACK AND CARRY-OVER.—

(1) NET OPERATING LOSS CARRY-BACK.—If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss

the fiscal year 1944 should be subtracted from the net income for 1944 with other appropriate adjustments as provided by law, and that the amount of the net operating loss incurred in the fiscal year 1946, with appropriate adjustments, is to be reduced by the amount that such net income for 1944 exceeds the accrued excess profits tax for 1944, and that the balance of the net operating loss is the amount of the carry-back to the fiscal year 1945. If the accrued excess profits tax for 1944 is equal to or greater than the net income for 1944, there is no reduction in the amount of the net operating loss for the year 1946 and the entire amount becomes the amount of the carryback to the year 1945.

In short, the statutory formula as here applicable, for computing the carryback to 1945, is that the carryback is the amount of the 1946 loss, less a certain figure which is to be arrived at by subtracting from the net income for the second preceding year (1944) the excess profits tax paid or accrued within the taxable year (1944).

The dispute centers over the appropriate figures to be used for net income and accrued excess profits tax for the fiscal year 1944. The parties agree that the net income and the excess profits tax accrued for each of the fiscal years 1944 and 1945 for the purposes of section 122 (b) should be computed before the allowance of any net operating loss deduction based upon carryback. Jacobs contends that the proper net income for the fiscal year 1944 to be used for this purpose is the net income finally determined, that is, the net income computed *after* all other agreed adjustments, including the allowance for accelerated amortization and the elimination of excess profits due to renegotiation. The parties agree that the net income as thus computed for the fiscal year 1944 is $4,908,979.33. Jacobs also contends that the proper accrued excess profits tax for the fiscal year 1944 to be used for this purpose is the excess profits tax computed as of the end of the year, that is *before* giving effect to accelerated amortization and *before* elimination of excessive profits due to renegotiation, but after giving effect to all other agreed adjustments. The parties agree that the accrued excess profits tax as thus computed is $6,435,282.11.

___

deduction for such second preceding taxable year without regard to such net operating loss.

(2) NET OPERATING LOSS CARRY-OVER.—If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the intervening taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such intervening taxable year without regard to such net operating loss and without regard to any net operating loss carry-back. For the purposes of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1941 shall be reduced by the sum of the net income for each of the two preceding taxable years (computed for each such preceding taxable year with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and computed by determining the net operating loss deduction without regard to such net operating loss or to the net operating loss for the succeeding taxable year).

Respondent takes alternative positions. The first alternative position is that *both* net income and accrued excess profits tax for the fiscal year 1944 should be computed *after* taking into account all agreed adjustments, including the elimination of excessive profits due to renegotiation and the allowance of accelerated amortization. The parties are in agreement that the proper figures to be used as computed under this alternative are the amounts of $4,908,979.33 for net income and $3,772,807.02 for accrued excess profits tax. Respondent's second alternative position is that *both* net income and accrued excess profits tax for the fiscal year 1944 should be computed *before* taking into account any later adjustments, including elimination of excess profits tax due to renegotiation and allowance of accelerated amortization. The parties are in agreement that the proper figures to be used as computed under this alternative are the amounts of $8,220,367.81 for net income and $6,401,871.87 for accrued excess profits tax. In short, the respondent is arguing for consistent treatment of both the net income and the accrued excess profits for the fiscal year 1944 in computing the amount of the carryback under section 122 (b) for the fiscal year 1945.

As to the correct excess profits tax figure to be used by Jacobs in making the disputed computation, we agree with Jacobs that it should be the tax as computed at the end of the fiscal year 1944, before giving effect to subsequently accelerated amortization and before elimination of subsequently determined excessive profits due to renegotiation but after giving effect to all other agreed adjustments. We think that *Lewyt Corporation* v. *Commissioner*, 349 U. S. 237, is controlling on this point. In that case the Supreme Court was faced with the interpretation of sections 122 (b) (1) and 122 (d) (6), which are the same subsections involved here. There, the accrual basis taxpayer argued that the excess profits tax "accrued" was the tax as shown on its 1944 return, while the respondent made the argument that the excess profits tax to be used was the one ultimately determined, after taking cognizance of renegotiation in a subsequent year relating to 1944, a 1946 carryback, and other adjustments. The Court held as follows:

In short, the amount of tax accrued within the taxable year under § 122 (d) (6) is to be determined in accord with the normal accounting concepts relevant to the accrual basis. That amount is not, of course, to be ascertained solely by reference to the figure set forth in the taxpayer's return, for that figure may be erroneously computed on the accrual basis. But when an amount is arrived at by proper application of recognized accounting principles on the accrual basis, the test of § 122 (d) (6) has been met. Events and transactions of later years, irrelevant to a determination of income on the accrual basis, do not warrant alteration of the figure computed under § 122 (d) (6) for the year in question.

We also agree with Jacobs that the correct net income figure to be used in the section 122 (b) (1) computation for the fiscal year 1944 is the net income reflecting all adjustments, including the subsequent

allowance relating back to 1944 for accelerated amortization, the elimination of excessive profits for 1944 due to renegotiation, as well as various other adjustments made to net income by revenue agents. Again we think that the *Lewyt* case is controlling. In the *Lewyt* case, *supra*, the net income figure used for the fiscal year 1944, in the section 122 (b) (1) computation, was the figure, after all agreed adjustments were made, including a renegotiation adjustment which was made in subsequent years and related back to the net income figure for 1944. It is true that the issue before the Supreme Court was as to the "accrued" excess profits tax for the fiscal year 1944, but it is equally true that the net income for that year was an indispensable part of the computation. In reaching its decision the Supreme Court was obviously aware of the inconsistent method of determining the two figures, the net income being determined after all adjustments, and the excess profits tax figure being determined before the adjustment for renegotiation. In fact, the dissenting opinion of Mr. Justice Frankfurter focuses upon this inconsistency and we can assume that the majority reached the decision it did with this inconsistency clearly in mind.

An examination of the statutory scheme also calls for the result we have reached here with respect to the net income figure to be used. Section 122 (b) (1) provides that it is the "net income" of the second preceding taxable year (here, Jacobs' fiscal year 1944) which is to be adjusted by the exceptions, additions, and limitations of section 122 (d) (6). Section 124 (d) (4) requires a taxpayer who has elected to take accelerated amortization to relate the adjustment back to the net income of prior years and to recompute his tax for those years. In connection with the renegotiation adjustment, the Code also calls for a retroactive adjustment of the net income for prior years. Section 3806 (a) (1) provides that "the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated." Section 3806 (a) (3) contains the corollary provision that "[t]he amount of the payment, repayment, or offset described in paragraph (1) or paragraph (2) shall not constitute a deduction for the year in which paid or incurred." Thus, in each instance the adjustment must, under the express provisions of the Code, be related back to the prior year so that they can be reflected in the net income for such prior year. It would be illogical, we think, in view of the purpose of section 122, to interpret "net income" as an amount that does not reflect such adjustments. Section 122, it is clear, contemplates the allocation of true economic loss over a period of years, and we think that the renegotiation and the amortization adjustments must be taken into account in achieving this statutory purpose.

Respondent makes a formidable argument for its consistent treatment theory—that the figure for accrued excess profits tax, and the figure for income, should both be computed *before* taking into account all adjustments or both be computed *after* taking into account all adjustments. Respondent realizes his first task is to explain away the precedent of the *Lewyt* case.

His first argument is that the *Lewyt* opinion did no more than decide that the excess profits figure that was to be used was to be computed before the allowance of the net operating loss carryback for 1946. We do not so read the opinion. The majority opinion speaks of this loss carryback figure for 1946 and "other adjustments." The dissenting opinion of Mr. Justice Frankfurter shows the other adjustments included refunds or credits of 1944 excess profits taxes due to renegotiation proceedings in later years. Clearly the case holds that no adjustment of 1944 excess profits tax because of renegotiation in later years is to be made when applying the statutory formula for computing the carryback to 1945. *Continental Foundry & Machine Co.* v. *United States*, 159 F. Supp. 608.

Respondent argues that the *Lewyt* case did not decide any formula for determining the income figure of 1944 for that figure was stipulated. It is true that there the figure was stipulated but the stipulated figure was the figure arrived at by reflecting the adjustment for renegotiation rather than the figure originally reported as net income for 1944. In Mr. Justice Frankfurter's dissent it is stated the statute "justifies the assumption, made by the Court and both parties, that the figure for 1944 net income to be used in the formula is the lower figure reflecting the adjustment for renegotiation * * * rather than the one originally reported."

The only difference between this case and the *Lewyt* case, as we read the latter opinion, is that here there was the added adjustment for an increased accelerated amortization deduction. That the treatment for such an adjustment, happening in a later year, is identical with the treatment of a renegotiation adjustment such as was involved in the *Lewyt* case, see *Todd Shipyards Corp.* v. *United States*, 161 F. Supp. 401, (Ct. Cl., 1958).

We hold that the net income figure to be used by Jacobs in the section 122 (b) (1) computation for the fiscal year 1944 is the one finally determined, that is, the one after all adjustments have been made, including those connected with renegotiation and accelerated amortization. We also hold that the correct accrued excess profits tax figure to be used by Jacobs for that year is the tax computed as of the year end, that is, before giving effect to subsequently accelerated amortization and before elimination of subsequently determined excess profits due to renegotiation, but after giving effect to all other agreed adjust-

ments. Our holding on this issue with respect to Jacobs is equally applicable to Parts.

The next issue involves the applicability of the tax benefit doctrine to Jacobs' fiscal year 1947. In the statutory notice of deficiency in Docket No. 56526, dated November 29, 1954, the respondent determined a net operating loss for the year ended July 31, 1947, of $471,259.91, which was allowed as a net operating loss deduction in the fiscal year ended July 31, 1945. In a statutory notice of deficiency in Docket No. 69983, dated July 24, 1957, the respondent determined a net income of $3,651,184.68 for the fiscal year ended July 31, 1947. Respondent contends that the deduction of accrued excess profits tax for the year ended July 31, 1944, from net income for the same year in computing the amount of the net operating loss carryback from the year ended July 31, 1946, to the year ended July 31, 1945, resulted in a tax benefit to Jacobs and the subsequent recovery by Jacobs of such excess profits tax in the amount of $3,745,013.83 by way of refunds or credits within the year ended July 31, 1947, constitutes income to Jacobs in the latter year. Similarly, respondent contends that the deduction by Parts of accrued excess profits tax for the year ended June 30, 1944, from net income for its same year in computing the amount of the net operating loss carryback from the year ended June 30, 1946, to the year ended June 30, 1945, resulted in a tax benefit to Parts, or Jacobs, as successor in interest and transferee of Parts, and the subsequent recovery by Jacobs of such excess profits tax in the amount of $379,489.63 by way of refunds or credits within the year ended July 31, 1947, constitutes income to Jacobs in the latter year.

Jacobs seeks to apply as a defense the doctrines of consistency and estoppel against the respondent, apparently in an attempt to tie the respondent to his initial determination that a net operating loss was incurred by Jacobs in the fiscal year 1947. However, we need not go into this particular defense, since, even if we assume that these doctrines do not apply here and go on to the merits of the issue, we do not think that the tax benefit doctrine is applicable under the facts of this case. *Budd Company* v. *United States*, 252 F. 2d 456; *National Forge & Ordnance Co.* v. *United States*, 151 F. Supp. 937 (Ct. Cl.).

The tax benefit principle, typically, comes into play where at some prior time the taxpayer has taken a deduction of some item and, subsequently, in a later year, that item is recovered. If the original deduction actually caused a reduction of the tax for that prior year, then the subsequent recovery of the same item constitutes income, in the year of recovery, to that extent. Sec. 22 (b) (12). Here, there was no prior deduction by Jacobs of excess profits taxes in the fiscal year 1944 from the income of that year. In fact, this is specifically forbidden by the Code. Sec. 23 (c) (1) (B). Moreover, it is obvious that the sub-

traction of the 1944 excess profits tax from 1944 net income, in the carryback computation under section 122 (b) (1), does not reduce the tax liability for 1944. As the Court of Claims pointed out in the *National Forge* case, *supra*, such deduction was "only for the purpose of determining how much of the net operating loss was to be applied against 1944 income and how much against 1945 income."

Congress thought it proper to permit a taxpayer to spread his true economic loss over a period of years and to give this purpose effect, it devised the statutory scheme under section 122. If we were to apply the tax benefit doctrine in a case like this, as respondent contends, it would have the effect of diluting the benefits of that section. We do not think we would be justified in doing so. It is true that windfalls may result. But the provisions of the section in the Code are explicit. *Lewyt Corporation* v. *Commissioner*, *supra*. In the *Budd* case, *supra*, the respondent presented the same argument as is here made and the opinion brands it as an attempt "to achieve substantially the same goal that [respondent] failed to gain in the Supreme Court" in the *Lewyt* case. The case holds the "tax benefit" doctrine should not be applied in a situation identical with the instant case.

We hold for Jacobs on this issue. In view of our holdings above, we do not reach the further arguments made by the parties on brief.

*Decisions will be entered under Rule 50.*