CELESTINO IRIARTE MIRÓ, Plaintiff and Appellant, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 12095. Decided December 18, 1961.

F. *Fernández Cuyar* and *Manuel I. Vallecillo* for appellant. *J. B. Fernández Badillo, Secretary of Justice,* and *J. C. Santiago Matos, Assistant Secretary of Justice,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo and Mr. Justice Rigau.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On July 16, 1953, the Secretary of the Treasury notified to the plaintiff-appellant income-tax deficiencies for 1950, which after an administrative hearing were finally assessed at $123,570.57. The taxpayer appealed to the court challenging the defendant's action in increasing several items of income for that year and disallowing certain deductions. All the items were compromised in the course of the proceeding with the exception of one consisting in an increase in plaintiff's net income in the sum of $139,879.34, which the defendant claimed represented plaintiff's capital gain in the involuntary sale, by condemnation, of his undivided interest in a certain property.

Regarding this item, the issue was whether the same was taxable in its entirety as maintained by the defendant, or whether only 25 per cent thereof was taxable as maintained by the plaintiff.

The facts which gave rise to this action, briefly stated, are the following:

The plaintiff and his brother were co-owners of certain undivided property of 302.70 cuerdas situated in Pueblo Viejo, Guaynabo, Puerto Rico. On March 3, 1942, the Secretary of the United States Navy brought in the Federal Court a proceeding to condemn 185.48 cuerdas of land of the property in question. On the same date he filed a declaration of taking

and deposited in court the sum of $30,000 as just compensation for the property taken. The title in fee simple therefore was vested in the United States of America. Act of Congress of February 26, 1931, ch. 307, § 1, 46 Stat. 1421; 40 U.S.C.A. § 258a, p. 219.

On May 7, 1942, the parties stipulated that in order to continue the efforts to reach a compromise, without the necessity of having a trial on the valuation of the tract taken, the trial would be continued until such time as either party moved for setting. Until 1948, the defendant continued to take unsuccessful steps with the federal authorities to set aside the condemnation and instead that he would permit the Federal Government to use the lands gratuitously for an indefinite time.

On December 6, 1943, the Government of Puerto Rico intervened in the condemnation proceeding claiming title and ownership of 50.75 cuerdas of the parcel taken. Intervention was allowed and on November 12, 1946, The People of Puerto Rico and the defendants therein stipulated that The People of Puerto Rico was the owner of 2,023.485 square meters of the lands taken.

The condemnation trial was held in March and August 1949, and on April 22, 1950 the Federal Court finally decided the case upholding the validity of the condemnation and fixing the value of the lands taken at $278,220.

On June 10, 1950, a check was deposited in court to the order of the defendants therein for the sum of $283,841.28 in payment of the deficiency allowed by the court and including $5,621.29 of interest.

██ The taxpayer kept his accounting books on a cash basis. The Secretary of the Treasury determined that the taxpayer had realized his capital gain in 1950, the date of the final judgment in the condemnation case and of the deposit in court of the money which is the basis for determining the gain realized from the involuntary sale of his property.

The taxable event arose that year and, consequently, the Secretary of the Treasury notified the deficiency, not for 1942, when the United States Government was vested with title to the property in fee simple, but for 1950. There is no controversy on this point. See *Buscaglia, Treas.* v. *Tax Court*, 65 P.R.R. 331; *Rubert* v. *Tax Court*, 74 P.R.R. 48; *Nitterhouse* v. *United States*, 207 F.2d 618, *cert. denied*, 98 L. Ed. 1091; *Helvering* v. *Nibley-Minnough Lumber Co.*, 70 F.2d 843; II Mertens, Law of Federal Income Taxation, §§ 12.39, 12.40. Nor is there any dispute that in a condemnation case the selling price is the price determined by the court, and that the taxpayer realizes the income when the court formally adjudicates the amount of condemnation, since when the government files its declaration of taking and deposits its estimate of the value of the lands, such payment is a provisional payment on account of the compensation which may be awarded by the court in its final judgment. *United States* v. *Miller*, 317 U.S. 369; *United States* v. *Catlin*, 142 F.2d 781; *Atlantic Coast Line Railroad Company* v. *United States*, 132 F.2d 959.[1]

The Secretary of the Treasury maintains that the problem is not the time the income was received. "The only problem raised in this assignment of error [says the Secretary] is whether or not the 'sale' made by the plaintiffs is covered by the provisions of Act No. 150 of 1948. Then, if the sale had legal effect prior to December 31, 1948, the plaintiff's case falls outside its protection because the latter applies only to sales made after December 31, 1948."

Let us examine the legal provisions applicable to the case.

Section 5(a) of the Income Tax Act (Act No. 74 of 1924, Sess. Laws, p. 400) provided:

---

[1] We have attributed to our condemnation laws a similar scope as respects the provisional nature of the order investing title in fee simple in the government upon the filing of a declaration of taking and taking of possession and depositing the sum estimated as just compensation for the property taken. *P. R. Housing Authority* v. *District Court*, 68 P.R.R. 50; *People* v. *632 Sq. Meters of Land, etc.*, 74 P.R.R. 897.

"Section 5(a).—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivisions (a) or (b) of section 7, and the loss shall be the excess of such basis over the amount realized."

Section 6(a) of the said Act provides: "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 5, shall be recognized, except as hereinafter provided in this section."

■ Act No. 150, approved May 10, 1948 (Sess. Laws, p. 346), amended § 5 *supra* of the Income Tax Act of 1924.[2] The amendment consisted in adding certain provisions under a new subd. (*f*), which provides:

"(*f*) In case of the sale by any individual of real estate held as owner for more than one (1) year (excluding real estate held as owner primarily for the sale to clients in the ordinary course of his industry or business, and real estate used in his industry or business), subject to the allowance for depreciation provided by Section 16(a) (8), only 25 per cent of the excess of the sum realized in the said sale over the basis established by subdivisions (a) or (b) of Section 7 shall be taken in consideration in computing the net income of said person."

Section 3 of said Act No. 150 was to have immediate effectiveness, but provided that the provisions added by the new subd. (*f*) shall be applicable only to the sales covered by said subdivision, made during the taxable years beginning after December 31, 1947.[3]

The superior court held that the provisions of the Income Tax Act of 1924 bearing on the realization of gain or loss from the *sale or other disposition* of capital assets apply equally to an involuntary sale, such as the case of condem-

---

[2] The provisions of this Act afford a remedy to the taxpayer. We must construe the same liberally. *Treasurer of Puerto Rico* v. *Tax Court; Cerra, Int.,* 74 P.R.R. 531.

[3] Section 3 of Act No. 150 of May 10, 1948, reads as follows:

"Section 3.—This Act, being of an urgent and necessary character, shall take effect immediately after its approval, but the provisions hereby

nation, and that, reading and construing subd. (f) in the light of the entire § 5, of which it formed a part, and of § 7, it should be concluded that the *disposition* of the property referred to in those sections *was made*, as a matter of fact and of law, as soon as the United States acquired in 1942 title to the property in fee simple, free from any encumbrance, lien, or adverse claim.

The determination on this point made by the trial court is not without a rational basis, since the Act admits of the interpretation given.

The difficulty in determining whether or not the involuntary disposition of appellant's property is covered by Act No. 150, lies in the vagueness of expression of the concept of the juridical act which it sought to exclude from its provisions. The Act reads that the provisions added by subd. (f) to § 5 of the Income Tax Act of 1924, shall be applicable only to the *sales* covered by the said subdivision *made* during the tax years beginning after December 31, 1947. What does *sales made* mean? If the sale were voluntary, perhaps we could resort to the provisions of the Civil Code dealing with the sale contract, which according to some textwriters is the perfect example of the contractual obligations, to look for the meaning of the concept *sales made* used in the Act; but since we are dealing with the conveyance of real property by condemnation, there is no room for applying thereto the civil-law principles governing the sale contract.[4] On the other hand, there is no question, as stated by the trial court, that in the instant case there was a disposition of real

---

added to Section 5 of this Income Tax Law of 1924 shall be applicable only to the sales covered by said subdivision, made during the tax years beginning after December 31, 1947."

[4] In the opinion of some textwriters, condemnation is not a juridical business nor, therefore, a forced sale—if it were a sale, it would be necessary to execute a contract of this nature—nor a forced conveyance, but rather an act of public law, the private-law consequence of which is the transfer of property. III-1 Enneccerus-Kipp-Wolff, *Tratado de Derecho Civil* 365.

property by condemnation. At any rate, such disposition of the property by condemnation is the closet to a sale.[5] The government acquires dominion title to the thing by the payment of the price thereof (determined by the court) to the owner, but outside of that characteristic it would be difficult, if not impossible, to find other characteristics common to the condemnation and the sale. We believe, however, that the final disposition of the property takes place when final judgment in the condemnation proceeding is entered. Apart from the fact that the government may not make use of the provisional remedy of taking the property immediately as soon as the condemnation proceeding is initiated, by filing the declaration of taking and possession and depositing with the court the appraised value of the property, it is not bound to proceed with the case nor to acquire the property because of the fact that it has commenced the proceeding. The order entered by the court vesting the title to the property in the government upon filing the declaration of taking is not even final, since the title thus acquired may be defeated where, in a case such as this, the government's power to take has been challenged thereby putting in issue the validity of the taking. The government does not necessarily acquire the title by reason of adopting the auxiliary proceeding. To this end, the final judgment in the proceeding, that is, in the condemnation suit, is necessary. *Catlin* v. *United States*, 324 U.S. 229, 89 L. Ed. 911. Consequently, we must conclude that in this case the disposition of the property took place when the United States District Court for Puerto Rico rendered final judgment in the condemnation proceeding fixing the price of the real property taken and passing upon the validity of the condemnation. Judgment having been entered and just compensation awarded by the court in 1950 having been deposited, the disposition or sale, by condemnation, of appellant's property should be deemed to have been made in

---

[5] See *Keneipp* v. *States*, 184 F. 2d 263.

1950 and the gain realized therefrom shall be taxable as provided in § 5 of the Income Tax Act of 1924, as amended by Act No. 150 of 1948.

The second assignment of error raises the question of whether or not the cost or value of the improvements made on the lands by the United States Government before acquiring title and during the possession thereof by virtue of the right of use granted by the appellant, should be added to the cost of the lands for the purpose of establishing the basis for determining the capital gain.

It appears from the record that on September 30, 1941 the appellant by agreement authorized the United States Government to fill the low lands of his property, and in exchange for the benefits accruing therefrom he ceded to the United States the right of way of the property. Accordingly, the United States filled 40½ cuerdas of those lands at a cost of $230,000 and also built a road, all of which was done at the expense of the assignee. The lands improved as well as the road were included in the lands object of condemnation.

The general principle for determining the basis for computing the income received from the disposition of property is to tax the gain once only. 3A Mertens, Law of Federal Income Taxation, § 21.01. The general rule is that the basis shall be the cost of acquisition, with adequate adjustments, on account of investment of additional capital, reimbursement or its equivalent, and other items. It has been held that the cost of improvements made by a lessee can not be included as part of the basis, by way of an investment or an expense chargeable to the capital account, except to the extent that the value of such improvements has been included in the lessor's income. Wm. Merriam Crane, 27 B.T.A. 360, aff'd, 68 F.2d 460. Such items can only become a part of the taxpayer's capital by having first come into the taxpayer as income. Mertens, op. cit. § 21.221. The appellant herein did not allege or prove that the cost of the improvements had

been included or reported prior thereto, for tax purposes, as part of his income. The case of *Commissioner* v. *Laguna Land & Water Co.*, 118 F.2d 112, cited by the appellant, does not support his contention. We therefore conclude that the second error was not committed.

The judgment rendered by the superior court will be modified accordingly, and, as thus modified, it will be affirmed and the case remanded for further proceedings.